[No. 64712-1-I.   Division One.   July 25, 2011.]

NATIONAL SURETY CORPORATION, *Respondent*, v. IMMUNEX CORPORATION, *Appellant*.

---

764

*James R. Murray* (of *Dickstein Shapiro LLP*) (*Cameron H. Faber*, of counsel) (*Linda D. Kornfeld* and *Damon A. Thayer* of *Jenner & Block LLP*, of counsel), for appellant.

*Jerret E. Sale, Deborah Lynn Carstens, Matthew J. Sekits,* and *Ronald J. Clark* (of *Bullivant Houser Bailey PC*); and *Catherine Wright Smith* and *Howard Goodfriend* (of *Smith Goodfriend PS*), for respondent.

¶1 APPELWICK, J. — Immunex challenges the trial court ruling that National Surety does not have a duty to defend in several lawsuits challenging Immunex's use of an inflated average wholesale price. National Surety cross appeals the trial court's order that it compensate Immunex for defense costs until the time of the court's ruling on the duty to defend unless it can show prejudice at trial. We affirm.

## FACTS

¶2 Immunex[1] Corporation and many other drug manufacturers were sued in at least 23 complaints (AWP litigation) alleging several claims relating to Immunex artificially inflating its average wholesale price (AWP). The claims included RICO (Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-1968) claims, state unfair trade and protection statutes violations, civil conspiracy, fraud, and breach of contract.

¶3 To summarize the underlying litigation, physicians and other providers of drugs are reimbursed by Medicare and other third party payors based on the AWP of the drug. Manufacturers periodically report the AWP of drugs to publishers, who then list that price. Immunex and other drug manufacturers allegedly engaged in a scheme to fraudulently manipulate the AWP of their drugs. As part of this scheme, the claims allege that Immunex reported inflated AWPs, which materially misrepresented the actual prices paid to Immunex for prescription drugs by drug providers such as hospitals, pharmacies, and physicians. As a result, drug providers were reimbursed significantly more money than they paid for Immunex manufactured drugs. Also, the claims allege Immunex advertised the difference or "spread" in prices as a reason why those in the distribution chain should sell its drugs, thus increasing its share of the generic drug market. The plaintiffs in the AWP cases include consumers, third party payors, government entities, and consumer rights groups.

¶4 National Surety Corporation insured Immunex under an umbrella and excess liability insurance policy. The policy periods at issue are from September 1, 1998 to September 1, 2002. On August 21, 2001, Immunex informed National Surety that potential claims had arisen against Immunex,

---

[1] We refer to the party as "Immunex," although Immunex merged with Amgen Inc. in July 2002.

specifically a qui tam investigation[2] by the United States Department of Health and Human Services, as well as government investigations initiated by several states. Immunex also notified National Surety that the federal investigation related to a 1995 lawsuit. But, Immunex stated that it could not release information about the investigations because the government required a signed confidentiality agreement. National Surety acknowledged receipt of that notice on October 17, 2001. National Surety asked Immunex to send copies of the suit papers, when available, for it to determine coverage. On February 14, 2003, Immunex sent a status report, updating National Surety on the status of the investigations but not notifying National Surety of the AWP lawsuits or forwarding documentation related to those lawsuits. The first AWP litigation complaint was filed on November 27, 2001.

¶5 On October 3, 2006, Immunex tendered defense of the AWP suits to National Surety and sought payment for the defense expenditures it had incurred. On October 30, 2006, National Surety responded, disclaiming the duty to defend based on failure to provide suit papers and requesting the necessary documentation. On December 12, 2006, Immunex sent copies of complaints, motions, and orders for some AWP cases.

¶6 The parties continued to discuss coverage. In March 2008, National Surety denied coverage but agreed under a reservation of rights to provide a defense with the right to obtain reimbursement of the amounts paid if it was determined by a court that there was no coverage or no duty to defend. Immunex alleges that National Surety has not paid any defense costs incurred in the AWP litigation.

¶7 Also in March 2008, National Surety filed this action, seeking a declaratory judgment that National Surety owed

---

[2] A qui tam action refers to the False Claims Act, 31 U.S.C. §§ 3729-3733, which prohibits persons from presenting false or fraudulent claims for payment to the federal government, 31 U.S.C. § 3729(a), and permits civil actions alleging such fraud to be filed either by the attorney general, 31 U.S.C. § 3730(a), or by private persons acting in the government's name, 31 U.S.C. § 3730(b)(1).

no duties to Immunex under the policy. In June 2008, the trial court granted Immunex's motion for a stay to prevent National Surety's declaratory action from proceeding until the underlying litigation had been resolved. The stay was apparently granted before the parties conducted any discovery. On December 16, 2008, the stay was lifted solely to permit the parties to present motions on the issue of National Surety's duty to defend.

¶8 Both parties presented motions for partial summary judgment on the issue of National Surety's duty to defend Immunex in the AWP litigation. On April 15, 2009, the trial court granted National Surety's motion for summary judgment, determining that National Surety had no duty to defend.

¶9 After stipulating to again lift the stay, in July 2009, National Surety filed a motion for summary judgment regarding indemnity,[3] an alternative motion for summary judgment regarding late notice, and a motion for summary judgment regarding the payment of defense costs. Immunex also filed a motion for partial summary judgment regarding the payment of defense fees and costs. The trial court denied National Surety's motion regarding payment of defense fees and costs and granted Immunex's motion regarding same, finding that unless National Surety could prove prejudice from late notice at trial, it could be obligated to pay defense costs until the date the court confirmed the claims were not covered. The trial court denied National Surety's motion to reconsider. The trial court then entered partial final judgment pursuant to CR 54(b) in order to permit this appeal to proceed.

¶10 Immunex appeals. National Surety cross appeals.

---

[3] On August 25, 2009, the trial court granted National Surety's motion regarding indemnity and denied its alternative motion regarding late notice. Immunex stipulated to withdrawing its claim for indemnity with respect to settlements or judgments entered in the AWP litigation, while reserving its right to reassert the claim if the April 15, 2009 order is overturned on appeal.

## DISCUSSION

### I. Duty To Defend

¶11 Immunex alleges that the trial court erred when it granted summary judgment to National Surety on the basis that National Surety had no duty to defend Immunex in the AWP litigation. Immunex contends that National Surety owed a duty to defend Immunex against the AWP litigation under the "discrimination" provision of the policy.

¶12 A motion for summary judgment presents a question of law reviewed de novo. *Osborn v. Mason County*, 157 Wn.2d 18, 22, 134 P.3d 197 (2006). A trial court grants summary judgment if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. CR 56(c).

¶13 Pursuant to the "personal injury" coverage within the policy at issue as modified by the endorsement,[4] National Surety was required to provide coverage for "Personal and Advertising injury that is caused by an offense arising out of [Immunex's] business but only if the offense was committed during our Policy Period."[5] The policy defined "Personal and Advertising injury" as "injury, including consequential Bodily Injury, arising out of one or more of the following offenses[, including] Discrimination." Neither the policy nor the endorsement defined "offense" or "discrimination."

---

[4] An endorsement to the Immunex policy in effect between September 1, 2001, and September 1, 2002, changed the policy. The original policy required National Surety to "pay on behalf of [Immunex] those sums that [Immunex b]ecomes legally obligated to pay as damages because of . . . Personal Injury or Advertising Injury that is caused by an offense committed during our Policy Period." The policy defined "personal injury" as "injury other than Bodily Injury caused by one or more of the following offenses[, including] Discrimination." We will interpret the language used in the endorsement, as we conclude that even under that language no coverage existed for the AWP litigation.

[5] All boldface emphasis contained in the policy has been omitted throughout this opinion.

¶14 The trial court found:

> "Discrimination" means more than a distinction or difference. The AWP complaints do not allege damages caused by discrimination. The complaints claim that Immunex, with or without the complicity of providers, gave false pricing information to those who paid the providers for drugs.

The trial court granted partial summary judgment in favor of National Surety, concluding that National Surety did not have a duty to defend Immunex in the AWP litigation.

¶15 Immunex alleges that a "predominant theme" of the underlying AWP litigation is discrimination, taking three forms: discrimination in pricing between AWP plaintiffs and providers, discrimination in pricing among providers, and a disparate impact on older Americans. National Surety contends that the policy was not triggered because no AWP plaintiff alleged "discrimination" claims and each complaint sought recovery based solely on fraudulent overstatement of AWPs. Interpretation of an insurance policy is a question of law reviewed de novo. *Woo v. Fireman's Fund Ins. Co.*, 161 Wn.2d 43, 52, 164 P.3d 454 (2007).

¶16 The criteria for interpreting insurance policies in Washington are well settled. We construe insurance policies as contracts. *Weyerhaeuser Co. v. Commercial Union Ins. Co.*, 142 Wn.2d 654, 665, 15 P.3d 115 (2000). We consider the policy as a whole, and we give it a " 'fair, reasonable, and sensible construction as would be given to the contract by the average person purchasing insurance.' " *Id.* at 666 (internal quotation marks omitted) (quoting *Am. Nat'l Fire Ins. Co. v. B&L Trucking & Constr. Co.*, 134 Wn.2d 413, 427, 951 P.2d 250 (1998)). Most importantly, if the policy language is clear and unambiguous, we must enforce it as written; we may not modify it or create ambiguity where none exists. *Quadrant Corp. v. Am. States Ins. Co.*, 154 Wn.2d 165, 171, 110 P.3d 733 (2005). A clause is considered ambiguous only if it is susceptible to two or more reasonable interpretations. *Id.* If an ambiguity exists, the clause is construed in favor of the insured. *Id.* at 172. However, "the expectations of the insured cannot override the plain language of the contract." *Id.*

¶17 The trial court found, "The AWP complaints do not allege damages caused by discrimination."[6] Immunex argues that the trial court incorrectly required the AWP complaints to allege injuries directly caused by discrimination in order for National Surety's duty to defend to be triggered. Immunex alleges that the AWP plaintiffs' claims "arise out of" discrimination, and therefore the duty to defend was triggered.

¶18 Immunex claims that the policy requires a duty to defend "as long as the claimants allege injury potentially and loosely based at least in part upon 'discrimination.'" But, under *Kitsap County v. Allstate Insurance Co.*, 136 Wn.2d 567, 580, 964 P.2d 1173 (1998), to determine whether coverage exists, we must look to the type of offense that is alleged rather than the nature of the injury.[7] *See also Cle Elum Bowl, Inc. v. N. Pac. Ins. Co.*, 96 Wn. App. 698, 707, 981 P.2d 872 (1999) ("[The insured] misunderstands a basic tenet of *Kitsap County*: the theory underlying the claim against the insured, not the nature of the alleged injury, determines whether personal injury coverage or bodily injury and property damage coverage applies."). Unlike the claims in *Kitsap County*, the claims here for violations of consumer protection statutes and other similar claims are not analogous to claims of discrimination.

¶19 Therefore, we must look to the type of offense that is alleged and determine whether that offense is arising out of discrimination. Immunex seeks too broad of an interpretation of the term "arising out of." Washington

---

[6] The trial court's conclusion tracks the original policy provision, which states that personal injury means "injury . . . *caused by* . . . [d]iscrimination." (Emphasis added.) The endorsement changed that definition to "injury . . . *arising out of* . . . discrimination." (Emphasis added.)

[7] Similar to National Surety's policy, the Kitsap County policy defined "personal injury" as injury arising from the offenses of " 'wrongful entry or eviction or other invasion of the right of private occupancy.'" *Kitsap County*, 136 Wn.2d at 573. The question before the Washington Supreme Court was "whether the claims against the County for trespass, nuisance, and interference are equivalent to claims for wrongful entry or eviction or other invasion of the right of private occupancy." *Id.* at 586. The court concluded claims alleging trespass, nuisance, and interference constitute personal liability under policies that provide coverage for personal injury arising from wrongful entry or invasion. *Id.* at 571.

courts have previously defined "arising out of" as meaning " 'originating from,' 'having its origin in,' 'growing out of,' or 'flowing from.' " *Austl. Unlimited, Inc. v. Hartford Cas. Ins. Co.*, 147 Wn. App. 758, 774, 198 P.3d 514 (2008); *Toll Bridge Auth. v. Aetna Ins. Co.*, 54 Wn. App. 400, 404, 773 P.2d 906 (1989); *Avemco Ins. Co. v. Mock*, 44 Wn. App. 327, 329, 721 P.2d 34 (1986). Following those cases, we limit coverage to offenses originating from discrimination; the injuries here do not. While it is true that some AWP complaints alleged that consumers of certain groups paid a higher price as a result of Immunex's actions, the offenses originate not from discriminatory actions but from fraudulently inflating the AWP. Although the effect of that action might have impacted some consumers and providers more than others, that does not mean the offenses originated from discrimination. The theories underlying the offenses are not that the consumers and providers paid higher prices as compared to others, but that the price itself was fraudulently inflated.

¶20 Because we agree that the offenses alleged in the AWP complaints do not arise out of discrimination, we need not address Immunex's other arguments that the trial court incorrectly interpreted the terms "discrimination" and "offense." The trial court did not err in concluding that no coverage existed here.

II. Reimbursement of Defense Costs to Immunex

¶21 The trial court found that National Surety had an obligation to pay defense costs until April 14, 2009, the date of the court's determination, unless National Surety could prove at trial that it had been prejudiced by the late notice of the AWP claims. National Surety argues on cross appeal that this was error.

¶22 The policy gave National Surety "the right and duty to . . . defend any Insured against any Suit, seeking damages . . . [t]o which Coverage B applies." On March 31, 2008, National Surety denied coverage but agreed to defend Immunex in the AWP litigation under a reservation of

rights. Specifically, National Surety agreed to reimburse reasonable defense fees and costs from October 3, 2006, the alleged date of tender. National Surety expressly stated in that letter that it reserved the right to recoup amounts paid in defense if a court ultimately determined that National Surety had no duty to defend. The policy contained no provision permitting recoupment of defense costs paid on behalf of the insured.

¶23 The issue here is whether an insurer must reimburse an insured for defense costs paid by the insured when it is determined that the insurer owed no duty to defend or indemnify the insured and the insurance policy does not expressly provide for a right of recoupment. This is an open question in Washington.

■ ■ ¶24 Our Supreme Court has long held that the duty to defend is different from and broader than the duty to indemnify. *Am. Best Food, Inc. v. Alea London, Ltd.*, 168 Wn.2d 398, 404, 229 P.3d 693 (2010). The duty to indemnify exists only if the policy actually covers the insured's liability. *Id.* In contrast, the duty to defend arises when a complaint against the insured, construed liberally, alleges facts which could, if proved, impose liability upon the insured within the policy's coverage. *Id.* An insurer is not relieved of its duty to defend unless the claim alleged in the complaint is "clearly not covered by the policy." *Truck Ins. Exch. v. VanPort Homes, Inc.*, 147 Wn.2d 751, 760, 58 P.3d 276 (2002). Moreover, if a complaint is ambiguous, a court will construe it liberally in favor of "triggering the insurer's duty to defend." *Id.* In contrast, the duty to indemnify "hinges on the insured's actual liability to the claimant and actual coverage under the policy." *Hayden v. Mut. of Enumclaw Ins. Co.*, 141 Wn.2d 55, 64, 1 P.3d 1167 (2000). In sum, the duty to defend is triggered if the insurance policy conceivably covers the allegations in the complaint, whereas the duty to indemnify exists only if the policy actually covers the insured's liability. *Woo*, 161 Wn.2d at 53; *Hayden*, 141 Wn.2d at 64. Therefore, an insurer must defend until it is clear that the claim is not covered. *Woo*, 161 Wn.2d at 53-54.

¶25 The duty to defend attached here at the point that a complaint was filed against Immunex alleging a potentially covered claim.[8] *Am. Best Food*, 168 Wn.2d at 404. As other courts have reasoned, payment of defense costs for claims that are potentially covered is part of the bargained-for exchange between the insurer and the insured. *See, e.g., Buss v. Superior Court*, 16 Cal. 4th 35, 49, 939 P.2d 766, 65 Cal. Rptr. 2d 366 (1997) (explaining that an insurer contracts to pay the entire cost of defending claims that are at least potentially covered). The trial court did not err in holding that National Surety had a duty to defend until the trial court declared that the duty did not exist.

¶26 This holding is supported by dicta in *Woo*. In that case, the court held that coverage existed and the insurer had a duty to defend. 161 Wn.2d at 66-67. In dicta, the court reminded insurers that if the insurer is uncertain of its duty to defend, it may defend under a reservation of rights and seek a declaratory judgment that it has no duty to defend, stating: "Although the insurer must bear the expense of defending the insured, by doing so under a reservation of rights and seeking a declaratory judgment, the insurer avoids breaching its duty to defend and incurring the potentially greater expense of defending itself from a claim of breach." *Id.* at 54.

¶27 This proposition derives from a footnote in *Kirk v. Mount Airy Insurance Co.*, 134 Wn.2d 558, 563 n.3, 951 P.2d 1124 (1998). After holding that the remedy for an insurer's bad faith refusal to defend is a presumption of harm and coverage by estoppel, our Supreme Court suggested: "The

---

[8] We note that the reservation of rights method is employed by insurers in at least two contexts: where a question of fact exists that will determine coverage that will be decided by the trier of fact only at the end of the underlying litigation, and where a question of law exists regarding coverage, for example whether the terms of the policy cover the claims. *See* THOMAS V. HARRIS, WASHINGTON INSURANCE LAW § 17.01, at 17-3 (3d ed. 2010). Although the reasoning for the attachment of the duty to defend more logically applies to the case where a factual determination needs to be made, the same principles regarding the duty to defend were applied by the Supreme Court in *Woo*, which involved a question of coverage as a matter of law. *See* 161 Wn.2d at 52-54. Prior Washington cases on the duty to defend appear to make no meaningful distinction between the two contexts.

insurer can easily avoid all of these issues by defending with a reservation of rights. When that course of action is taken, the insured receives the defense promised and, if coverage is found not to exist, the insurer will not be obligated to pay."[9] *Id.* This language was quoted later in *Truck Insurance*, where the court held that where an insurer acts in bad faith in refusing to defend, the settlements entered into by insureds with third parties and approved by a court as reasonable will be presumed to be reasonable. 147 Wn.2d at 755, 761. This was discussed in dicta in *Holly Mountain Resources, Ltd. v. Westport Insurance Corp.*, 130 Wn. App. 635, 104 P.3d 725 (2005). Relying on *Truck Insurance*, the court defined "reservation of rights" as "a means by which the insurer conditionally defends its insured, subject to potential reimbursement by the insured upon later discovery that there was no duty to defend." *Id.* at 652 n.8 (citing *Truck Ins.*, 147 Wn.2d at 761); *see also Tank v. State Farm Fire & Cas. Co.*, 105 Wn.2d 381, 391, 715 P.2d 1133 (1986) ("We also recognize that insurers, when faced with defending under a reservation of rights, are not without alternatives. They may sue for a declaratory judgment before they undertake a defense, to determine their liability. The company may also instruct an insured to pay for his own defense, reimbursing him for defense costs if the final judgment establishes the company's liability." (citations omitted)).

¶28 The cases underlying the statement in *Woo*, 161 Wn.2d at 54, that "the insurer must bear the expense of defending the insured" discussed the issue of reimbursement only in dicta. Like in *Woo*, no case provides a substantive analysis of the issue of reimbursement raised here. Any discussion to the contrary does not foreclose affirming the trial court's grant of reimbursement to Immunex for the cost of the defense.

---

[9] It is unclear whether the statement "obligated to pay" refers to the obligation to pay a third party under a duty to indemnify or to the obligation to pay defense costs.

¶29 We note that the policy at issue did not expressly authorize National Surety to offer a defense under a reservation of rights subject to recoupment. This court cannot rewrite the policy to so allow. In *Minnesota Mutual Life Insurance Co. v. Fraser*, 128 Wash. 171, 175, 222 P. 228 (1924), the Supreme Court held that advances against income earned made to an employee for expenses were not recoverable from the employee when he did not earn the full amount. The court reasoned that there was no indication in the agreement that the advances were intended to be a loan and that the advances benefited the employer. *Id.* Similarly here, where no language in the agreement between the parties permits recoupment, Immunex, the party receiving the benefit, cannot be liable for reimbursement.

¶30 National Surety argues that *Fraser* is not analogous and relies on the fact that in that case the employer had actually paid the advances and used them to its benefit. In contrast, here National Surety did not pay out defense costs, act to its benefit, or control the defense. But, the fact that National Surety had not, at the time of the trial court ruling, actually paid the costs of Immunex's defense cannot support a different result here than in a case where the insurer had already provided a defense. It would be unfair to refuse recoupment to an insurer who actually provided a defense while excusing an insurer from reimbursing an insured who undertook its own defense. Such a holding would encourage insurers to avoid payments and would interfere with the policy goal of defending the insured. National Surety argues that to require insurers to reimburse insureds would discourage insurers from providing a defense. But, the risk of a bad faith claim and coverage by estoppel will prevent resistance to provision of a defense.

¶31 We also decline to permit insurance companies to assert a unilateral implied contract that would modify the language of the policy. *See* THOMAS V. HARRIS, WASHINGTON

INSURANCE LAW § 17.01, at 17-2 (3d ed. 2010)[10] ("A reservation of rights will never allow an insurer to seek retroactive reimbursement for attorney fees and defense costs already incurred by the insurer."). If the policy does not permit an insurer to recoup costs paid under an offer to defend its insured with a reservation of rights, this court will not read such a provision into the policy.

¶32 We also decline to require Immunex to pay its own costs for the defense under an equitable theory such as unjust enrichment.[11] As recognized by other courts, the offer of a defense under a reservation of rights benefits the insurer as well as the insured, as it allows the insurer to protect its rights and avoids the risk of a poor defense exposing it to liability. *See* Michael M. Marick, *An Insurer's Right to Recoup Non-Covered Defense Costs and Indemnity Payments*, *in* NEW APPELMAN ON INSURANCE: CURRENT CRITICAL ISSUES IN INSURANCE LAW 10-11 (July 2007) (quoting *Gen. Agents Ins. Co. of Am. v. Midwest Sporting Goods Co.*, 215 Ill. 2d 146, 163-64, 828 N.E.2d 1092, 293 Ill. Dec. 594 (2005)); *Terra Nova Ins. Co. v. 900 Bar, Inc.*, 887 F.2d 1213, 1219-20 (3d Cir. 1989), *criticized as dicta in Cincinnati Ins. Co. v. Grande Pointe, LLC*, 501 F. Supp. 2d 1145, 1164 n.3 (E.D. Tenn. 2007). Although here National Surety has not yet taken on the actual defense of Immunex, National Surety had the benefit of insulating itself from a bad faith claim and possible coverage by estoppel. Therefore, the payment of the defense costs is not purely a gratuity to the insured and no unjust enrichment occurs if National Surety covers the cost of the defense until the trial court ordered otherwise.

---

[10] The Washington Supreme Court has relied on the Harris treatise as authority. *See, e.g., Woo*, 161 Wn.2d at 54; *Mut. of Enumclaw Ins. Co. v. Dan Paulson Constr., Inc.*, 161 Wn.2d 903, 914 n.8, 169 P.3d 1 (2007).

[11] To establish a theory of unjust enrichment, a party must show a benefit conferred upon the defendant by the plaintiff; an appreciation or knowledge by the defendant of the benefit; and circumstances that would make it inequitable for the defendant to retain the benefit without the payment of its value. *Young v. Young*, 164 Wn.2d 477, 484, 191 P.3d 1258 (2008).

¶33 We hold that the trial court did not err in ordering National Surety to reimburse Immunex for defense costs until the date that the trial court resolved the disputed coverage.

III. Pre-tender Defense

¶34 National Surety additionally argues that at minimum, it cannot be liable for costs incurred by Immunex prior to tender of some of the AWP lawsuits in October 2006.[12]

¶35 As previously discussed, an insurer's duty to defend arises when a complaint against the insured alleges facts which could impose liability upon the insured within the policy's coverage. *Mut. of Enumclaw Ins. Co. v. USF Ins. Co.*, 164 Wn.2d 411, 420-21, 191 P.3d 866 (2008). However, " '[a]n insurer cannot be expected to anticipate when or if an insured will make a claim for coverage; the insured must affirmatively inform the insurer that its participation is desired.' " *Id.* at 421 (alteration in original) (internal quotation marks omitted) (quoting *Griffin v. Allstate Ins. Co.*, 108 Wn. App. 133, 140, 29 P.3d 777, 36 P.3d 552 (2001)). Thus, " 'breach of the duty to defend cannot occur before tender.' " *Id.* (quoting *Griffin*, 108 Wn. App. at 141).

¶36 This court in *Griffin* refused to hold that pre-tender fees and costs are not recoverable. 108 Wn. App. at 136 ("Subject to policy-based defenses, an insurer is liable for fees and costs incurred before the insured tenders defense of a covered claim."). In *Griffin*, the insureds tendered their defense to their insurer only after hiring a lawyer themselves. *Id.* at 136-37. This court required the insurer to provide pre-tender defense costs. *Id.* at 149. We distinguished the breach of a duty to defend, which cannot, under *Unigard Insurance Co. v. Leven*, 97 Wn. App. 417, 983 P.2d 1155 (1999), occur prior to tender, and the duty to reimburse an insured for costs incurred prior to tender. *Griffin*, 108

---

[12] We agree with Immunex that National Surety did not expressly raise this argument before the trial court. But, we agree to address it in our discretion under RAP 2.5.

Wn. App. at 141 ("The scope of a duty, however, is defined not by its breach, but by the contract."). Under *Griffin*, even if the policy required tender as a condition precedent to the duty to defend, as the policy did here,[13] a showing of actual and substantial prejudice is required before an insured's breach will release an insurer from its duty to defend. *Id.* at 141.

¶37 National Surety alleges that *Truck Insurance* and *Woo* eroded the rule in *Griffin* by expressly permitting an insurer to defend under a reservation of rights while seeking a declaratory judgment. National Surety distinguishes this case from *Griffin* on the basis that in that case the court found that the insurer actually had an obligation to defend. But, as discussed above, National Surety may be liable for the duty to defend even if this court ultimately agrees that there was no coverage for the AWP litigation. This is still true under *Truck Insurance* and *Woo*. Similarly, National Surety's attempts to rely on *Truck Insurance* makes the assumption that a prompt declaratory judgment action absolves it of the duty to defend. As discussed above, *Truck Insurance* does not support that argument. *Griffin* is still good law.

¶38 Unless it can show substantial and actual prejudice, National Surety is liable for pre-tender defense costs. Also, a question of material fact remains regarding whether Immunex's tender of the lawsuit was in fact late. These are issues for trial. The trial court did not err in denying National Surety's motion for summary judgment based on pre-tender costs.

## IV. Prejudice as a Matter of Law

¶39 National Surety argues that prejudice should be presumed in this case as a matter of law as a result of

---

[13] National Surety's policy required that Immunex notify it as soon as practicable "[o]f any Occurrence which may result in a claim under this policy, when the Occurrence is known to [y]our officer or insurance manager" and "[i]f a claim is made or Suit is brought against any Insured." The policy also required that Immunex not incur any "expense, other than first aid," to "[a]ssume no obligation" without the permission of the insurer, and to "[c]ooperate with [the insurer] in . . . defense of any Insured against any Suit."

Immunex's allegedly late tender. In order to show prejudice, the insurer must prove that an insured's breach of a notice provision had an identifiable and material detrimental effect on its ability to defend its interests. *Mut. of Enumclaw*, 164 Wn.2d at 430. If the insurer claims that its own counsel would have defended differently, it must show that its participation would have materially affected the outcome, either as to liability or the amount of damages. *Id.* If the insurer claims that it was deprived of the ability to investigate, it must show that the kind of evidence that was lost would have been material to its defense. *Id.* In *Mutual of Enumclaw*, the court articulated a nonexclusive, illustrative list of factors that courts may use to evaluate prejudice, including: Were damages concrete or nebulous? Was there a settlement or did a neutral decision maker calculate damages; what were the circumstances surrounding the settlement? Did a reliable entity do a thorough investigation of the incident? Could the insurer have eliminated liability if given timely notice? Could the insurer have proceeded differently in the litigation? *Id.* at 429-30. Whether or not late notice prejudiced an insurer is a question of fact, and it will seldom be decided as a matter of law. *Id.* at 427; *Dien Tran v. State Farm Fire & Cas. Co.*, 136 Wn.2d 214, 228, 961 P.2d 358 (1998).

¶40 National Surety relies on *Leven* to prove that prejudice resulting from late notice can be found as a matter of law. In that case, the insurance company showed that had tender been timely, it would have argued that the insured was not personally liable and precluded the insured in question from being named as a potentially liable party. *Leven*, 97 Wn. App. at 427, 431. This court held that the lost opportunity to refute Leven's liability resulted in prejudice. *Id.* at 431. National Surety makes no comparable argument here.

¶41 National Surety here alleges prejudice as a matter of law resulting from late tender and from Immunex's motion for a stay in the declaratory action. In its motion for summary judgment on this issue, National Surety sought

complete relief from any obligation to pay defense costs based on the theory that Immunex forfeited its right to those payments through breach of the contract terms. But, National Surety failed to allege an "identifiable prejudicial effect on [its] ability to evaluate, prepare or present its defenses to coverage or liability." *Id.* at 427. National Surety successfully defended on coverage and liability in the declaratory action. National Surety seeks to avoid the defense costs assumed under reservation of rights up to the point of that order. Whether and to what extent it may have been prejudiced by the delay in notice is a question distinct from coverage and liability. Mere alleged late tender is not enough to prove as a matter of law it could or would have avoided all defense costs had timely tender been made. The trial court did not err in finding an issue of material fact remained regarding prejudice and refusing to grant summary judgment on this issue.[14]

¶42 We affirm.

ELLINGTON and SPEARMAN, JJ., concur.

Reconsideration denied August 24, 2011.

Review granted at 173 Wn.2d 1006 (2012).

[14] This holding does not preclude National Surety from arguing to the fact finder that prejudice resulted as a matter of fact and that it should be excused from some or all of its obligation to pay defense costs.