FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON

2018 JAN 29 AM 9: 24

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| NATIONAL SURETY CORPORATION, | ) | No. 75674-5-I |
| Respondent, | ) | |
| | ) | |
| v. | ) | DIVISION ONE |
| | ) | |
| IMMUNEX CORPORATION, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: January 29, 2018 |
| | ) | |

APPELWICK, J. — At issue is the amount of defense costs for which Immunex is entitled to be reimbursed. Immunex argues that the trial court, on remand, erred in dismissing its counterclaims on summary judgment, and it erred in excluding evidence regarding National Surety's duty to investigate its claims. We affirm.

## FACTS

National Surety Corporation insured Immunex Corporation. The policy periods at issue are September 1, 1998 to September 1, 2002. On October 3, 2006, Immunex sent a letter to National Surety explicitly requesting coverage for a number of lawsuits filed on or after November 27, 2001, all alleging unlawful practices in its average wholesale pricing (AWP) of drugs. On December 14, 2006, National Surety denied coverage, and asked Immunex to provide any additional information that might change that coverage decision. On March 9, 2007, Immunex responded, arguing that the AWP claims were covered by its policy.

On March 31, 2008, after further correspondence, National Surety agreed to defend under a reservation of rights. While denying coverage, it agreed to defend "until such time as it can obtain a court determination confirming its coverage decision [and] reserves the right to recoup the amounts paid in defense if it is determined by a court that there is no coverage or duty to defend and that [it] is entitled to reimbursement." It concurrently filed for declaratory relief stating that the AWP litigation was not covered.

On April 15, 2009, the trial court granted National Surety this requested declaratory relief. However, the trial court denied National Surety's summary judgment motion to be relieved from paying any of Immunex's defense fees and costs. And, the trial court granted Immunex's partial summary judgment motion, finding that unless National Surety could prove prejudice from late notice at trial, it could be obligated to pay defense costs until the date the court confirmed the claims were not covered. The trial court then entered partial final judgment pursuant to CR 54(b) in order to permit appeal.

Immunex appealed and National Surety cross-appealed. This court affirmed. Nat'l Sur. Corp. v. Immunex Corp., 162 Wn. App. 762, 782, 256 P.3d 439 (2011). National Surety petitioned for review. The Supreme Court also affirmed and remanded to the trial court for determination of the defense fees and costs owed by National Surety. Nat'l Sur. Corp. v. Immunex Corp., 176 Wn.2d 872, 891, 297 P.3d 688 (2013).

On remand, Immunex brought counterclaims for breach of contract, bad faith, violation of the Consumer Protection Act[1] (CPA), and violation of the Insurance Fair Conduct Act[2] (IFCA). National Surety moved for partial summary judgment on these counterclaims. The trial court granted the motion. The only issue remaining, the extent that National Surety was prejudiced by any delay in Immunex tendering its claim, proceeded to trial. Immunex sought reimbursement for fees and costs in excess of $15,400,000. The jury found that National Surety was prejudiced, and granted judgment in the amount of $670,000. Immunex appeals.

## DISCUSSION

Immunex alleges two errors. First, it argues that the trial court erred in granting summary judgment on its contractual and extracontractual claims. Second, it argues that, the trial court erred in excluding evidence regarding National Surety's duty to investigate.

### I. Summary Judgment on Immunex's Claims

When reviewing a summary judgment order, this court engages in the same inquiry as the trial court. Hertog v. City of Seattle, 138 Wn.2d 265, 275, 979 P.2d 400 (1999). Summary judgment is proper when there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. Id. All facts and reasonable inferences are considered in the light most favorable to the nonmoving party. Id. Questions of law are reviewed de novo. Id.

---

[1] Ch. 19.86 RCW.
[2] RCW 48.30.010-.015.

3

Immunex asserted a breach of contract counterclaim based upon National Surety's failure to defend. In addition, it asserted counterclaims for extracontractual liability under common law bad faith and the Washington IFCA and CPA based on National Surety's failure to pay defense costs. Immunex argues that National Surety never in fact defended it in the underlying action, and therefore cannot claim this safe harbor.[3]

"An insurer has a duty to defend 'when a complaint against the insured, construed liberally, alleges facts which could, if proven, impose liability upon the insured within the policy's coverage.' An insurer is not relieved of its duty to defend unless the claim alleged in the complaint is 'clearly not covered by the policy.'" Woo v. Fireman's Fund Ins. Co., 161 Wn.2d 43, 52-53, 164 P.3d 454 (2007) (citation omitted) (quoting Truck Ins. Exch. v. VanPort Homes, Inc., 147 Wn.2d 751, 760, 58 P.3d 276 (2002)).

"If the insurer is uncertain of its duty to defend, it may defend under a reservation of rights and seek a declaratory judgment that it has no duty to defend. Although the insurer must bear the expense of defending the insured, by doing so under a reservation of rights and seeking a declaratory judgment, the insurer avoids breaching its duty to defend and incurring the potentially greater expense of defending itself from a claim of breach." Id. at 54 (citation omitted).

---

[3] "To fulfill its duty to defend, an insurer generally has the right to select the defense counsel who will represent its insured." Kruger-Willis v. Hoffenburg, 198 Wn. App. 408, 416, 393 P.3d 844, 848 (2017), review denied, 189 Wn.2d 1010, 402 P.3d 818 (2017). Alternatively, "[t]he duty to defend can be enforced by requiring the insurer to reimburse the insured for its costs in defending against the claim." Waite v. Aetna Cas. & Sur. Co., 77 Wn.2d 850, 858, 476 P.2d 847 (1970). Here, Immunex sought reimbursement of its defense costs incurred in the litigation.

"In Truck Insurance, we described a reservation of rights defense while seeking a declaratory judgment as 'a means by which the insurer avoids breaching its duty to defend while seeking to avoid waiver and estoppel.' [W]e then observed that '[w]hen that course of action is taken, the insured receives the defense promised and, if coverage is found not to exist, the insurer will not be obligated to pay.' National Surety relies on ambiguity in the phrase 'will not be obligated to pay' as supporting its contention that an insurer need not pay for defense costs incurred before a court determination of no coverage." Immunex, 176 Wn.2d at 885 (second alteration in original) (citations omitted) (internal quotation marks omitted) (quoting Truck Ins., 147 Wn.2d at 761).

"Taken in context, the language in Kirk[ v. Mt. Airy Ins. Co., 134 Wn.2d 558, 563, 951 P.2d 1124 (1998)] and Truck Insurance does not support National Surety's view. After obtaining a declaration of noncoverage, an insurer 'will not be obligated to pay' from that point forward. Any other rule would be at odds with our observation that, under a reservation of rights defense, 'the insured receives the defense promised'—at least until the determination of noncoverage. Kirk, 134 W.2d at 563 n.3 (emphasis added). If there were any question after Kirk and Truck Insurance that a reservation of rights defense must be a real defense, there is no question after Woo that 'the insurer must bear the expense of defending the insured.' Woo, 161 W.2d at 54, 164 P.3d 454." Immunex, 176 Wn.2d at 885-86.

"We hold that insurers may not seek to recoup defense costs incurred under a reservation of rights defense while the insurer's duty to defend is uncertain. Accordingly, National Surety may be held responsible for the reasonable defense

5

costs incurred by its insured until the trial court determined National Surety had no duty to defend." Id. at 887-88 (footnote omitted).

National Surety argued to the trial court on remand that language in our prior opinion required dismissal of Immunex's counterclaims: "Although here National Surety has not yet taken on the actual defense of Immunex, National Surety had the benefit of insulating itself from a bad faith claim and possible coverage by estoppel." Immunex, 162 Wn. App. at 778. Whether National Surety could be liable for breach of contract or extra-contractual relief for failure to timely pay defense costs was not a question squarely before the court. This statement was merely a straightforward application of Woo. Both the Court of Appeals and the Supreme Court were clearly aware that payment had not been made at the time of the appeal.[4] Neither hinted that this fact had any impact on the application of Woo relative to the defense under reservation of rights. Neither court hinted that the issues in Immunex's counterclaims were alive on remand.

This is not surprising. By defending under a reservation of rights, National Surety assumed as a matter of law the obligation to pay reasonable defense costs. The only question was how much was reasonable; the only duty was to pay. Immunex asserted a counter claim for more than $15 million dollars. National

---

[4] "National Surety may be held responsible for the reasonable defense costs incurred by its insured until the trial court determined National Surety had no duty to defend." Immunex, 176 Wn.2d at 887-88. In a footnote to that sentence it added, "It makes no difference that National Surety never actually paid any defense costs before the declaration of noncoverage on April 14, 2009. We agree with the Court of Appeals that this fact 'cannot support a different result here than in a case where the insurer had already provided a defense.' " Immunex, 176 Wn.2d at 888 n.3 (quoting Immunex, 162 Wn. App. at 777).

Surety asserted it owed nothing. It had a right to ask the court to determine the reasonableness of the fees and costs sought. The first appeal addressed whether the obligation was extinguished by reservation of a right of recoupment in the reservation of rights letter. That claim was rejected, but the court stated, "We recognize, however, that an insurer may avoid or minimize its responsibility for defense costs when an insured belatedly tenders a claim and the insurer demonstrates actual and substantial prejudice." Immunex, 176 Wn.2d at 875. The case was remanded to the trial court to determine factually if, and to what extent, the late tender of defense by Immunex prejudiced National Surety with respect to defense costs. Id. at 890-91. Until the reasonableness of the defense costs was resolved by the jury and reduced to judgment, tender of payment in this case was not required.

Immunex contends that if the trial court's ruling is allowed to stand, it would result in a "foundational shift in Washington insurance law," because insurers can insulate themselves from bad faith liability by issuing a reservation of rights. To grant the relief Immunex requests and reinstate its breach of contract and extra-contractual claims would require us to graft an exception onto the rule in Woo: an insurer defending under reservation of rights "avoids breaching its duty to defend and incurring the potentially greater expense of defending itself from a claim of breach" unless it does not pay defense costs pending any determination of reasonableness. 161 Wn.2d at 54. The trial court properly dismissed Immunex's claims for bad faith, breach of contract, and IFCA and CPA violations.

7

II. Evidentiary Decision

Immunex contends that the trial court erred by excluding evidence of National Surety's claim handling. This court reviews a trial court's evidentiary decision for abuse of discretion. City of Spokane v. Neff, 152 Wn.2d 85, 91, 93 P.3d 158 (2004). A trial court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or untenable reasons. In re Marriage of Littlefield, 133 Wn.2d 39, 46-47, 940 P.2d 1362 (1997).

The trial court specifically excluded evidence of National Surety's duties, but allowed evidence of National Surety's conduct:

> NSC's [National Surety Corporation] motion to preclude Immunex from presenting evidence of NSC's alleged bad faith, or damages other than defense costs incurred during the AWP litigation, is GRANTED IN PART AND DENIED PART. There are no surviving claims of breach, bad faith, waiver, or coverage by estoppel against NSC. Therefore, evidence about NSC's legal duties are not relevant. Immunex is correct, however, when it says, "fairness demands that Immunex be permitted to introduce evidence of what NSC in fact did in the months and years following receipt of notice of the AWP lawsuits." NSC claims it would have acted differently had it received certain information earlier. Immunex may therefore counter that assertion with evidence demonstrating whether and how NSC acted on information it did receive. Immunex is incorrect when it says, "fairness likewise demands that Immunex be permitted to present the jury with evidence concerning the insurer's duty to investigate the AWP lawsuits and render a coverage determination." Evidence of an insurer's duty to investigate or render a coverage determination is not relevant to the issues for trial, and is ORDERED excluded. Immunex agrees that its claim for damages at trial is limited to the costs it incurred in defending against the AWP litigation; NSC's motion to exclude evidence of other damages is granted.

We agree that evidence regarding breach of duty to investigate was not relevant. Whether a duty was breached did not bear on the question of prejudice suffered due to late tender. The only issues remaining for trial were: (1) when

should Immunex have tendered its claim and (2) if it had tendered its claim properly, what costs would National Surety have incurred?

"To establish actual prejudice resulting from delayed notice, an insurer must adduce affirmative proof of an advantage lost or disadvantage suffered as a result of the delay, which has an identifiable detrimental effect on the insurer's ability to evaluate or present its defenses to coverage or liability." Canron, Inc. v. Fed. Ins. Co., 82 Wn. App. 480, 491-92, 918 P.2d 937 (1996). Immunex argues that the evidentiary decision left the jury with "unbalanced evidence." But, nothing in the trial court's order limited Immunex's ability to present evidence of the extent of National Surety's opportunity to investigate the claims after it first was notified of the lawsuits. Evidence about what National Surety did and when remained admissible. Evidence about what National Surety could have done to reduce its losses, but did not do, remained admissible.

And, the jury heard evidence of what National Surety should have been doing to avoid suffering prejudice. Immunex presented testimony from two experts on how National Surety should have acted. When asked, "what was supposed to be included in the investigation," one expert testified at length about what National Surety's obligations were: "These are national standards. They will apply to virtually every state in the union in terms of what the industry standard is for the investigation of the claims." (Emphasis added.) Another expert testified that, upon tender, National Surety had "certain obligations that they need to comply with that include evaluating the complaint itself, doing a preliminary investigation, so that they can come to an understanding as to what this claim is about." National Surety

did not object to either of these experts' statements about the existence and nature of the duty to investigate. The jury was able to factor this evidence about claim handling into its decision about the amount of prejudice suffered. The trial court's evidentiary decision did not leave the jury with unbalanced evidence.

The trial court did not abuse its discretion in excluding evidence of duty.

We affirm.

Appelwick, J.

WE CONCUR: