# FILE

IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON

DATE___MAR 07 2013

_____
CHIEF JUSTICE

This opinion was filed for record
at _8:00 am__ on _March 7, 2013_

Ronald R. Carpenter
Supreme Court Clerk

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | |
|---|---|
| NATIONAL SURETY CORPORATION, | NO. 86535-3 |
| Petitioner, | |
| v. | EN BANC |
| IMMUNEX CORPORATION, | |
| Respondent. | Filed ___MAR 07 2013___ |

STEPHENS, J.—This court has long recognized that a liability insurer uncertain of its obligation to defend its insured may undertake a "reservation of rights" defense while seeking a declaration regarding coverage. The question in this case is whether the insurer may unilaterally condition its reservation of rights defense on making the insured absorb the defense costs if a court ultimately determines there is no coverage. We answer no. We recognize, however, that an insurer may avoid or minimize its responsibility for defense costs when an insured belatedly tenders a claim and the insurer demonstrates actual and substantial prejudice as a result. We affirm the Court of Appeals.

I

FACTS AND PROCEDURAL HISTORY

National Surety Corporation insured Immunex Corporation[1] under excess and umbrella liability policies between 1998 and 2002. In August 2001, Immunex notified National Surety that it was the subject of state and federal government investigations into its wholesale drug pricing. Immunex represented that it could not release information because of a confidentiality agreement. National Surety acknowledged receiving this notice and requested copies of any complaints that might emerge.

Beginning no later than 2001, a string of complaints was filed against Immunex. These complaints alleged that Immunex reported inflated average wholesale prices of its drugs that enabled providers of drugs—such as physicians, hospitals, and pharmacies—to receive reimbursements from Medicare and other third-party payors in amounts greater than what they actually paid. In all, at least 23 lawsuits related to pricing manipulation were filed against Immunex and other drug manufacturers under theories including breach of contract, civil conspiracy, fraud, and violations of state unfair trade and protection statutes and the federal Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961-1968.

It was not until October 3, 2006 that Immunex first tendered defense of the litigation to National Surety. In its tender letter, Immunex informed National

---

[1] Immunex Corporation merged with Amgen Corporation in 2002.

Surety that it was on the eve of settling a California lawsuit, identified other pending lawsuits, and requested payment for reasonable defense expenditures and settlement costs. Specifically, Immunex asserted that coverage fell under the umbrella insurance "Coverage B," which applied to cover "injury . . . arising out of . . . [d]iscrimination," Clerk's Papers (CP) at 654. National Surety requested suit papers and documentation, which Immunex sent in December 2006.

In March 2008, National Surety informed Immunex by letter that it "believe[d] there [wa]s no coverage . . . for the claims alleged against Immunex in the [average wholesale price] litigation." CP at 1074. While National Surety disclaimed any obligation to defend or indemnify, it indicated it "wishe[d] to complete its investigation regarding coverage," CP at 1075, suggesting that its lack of coverage determination was only preliminary. The letter stated:

> [National Surety] agrees to defend Immunex until such time as it can obtain a court determination confirming its coverage decision. [National Surety] agrees to provide a defense even though it has not completed its investigation regarding the known loss and breach of conditions issues because [National Surety] wants to be sure it has protected Immunex's interests while it pursues that investigation.
>
> The lawsuit[s] were tendered to [National Surety] for defense on October 3, 2006 . . . and that is the date from which [National Surety] is prepared to reimburse reasonable defense fees and costs. . . . [National Surety] reserves the right to recoup the amounts paid in defense if it is determined by a court that there is no coverage or duty to defend and that [National Surety] is entitled to reimbursement.

CP at 1074-75.

About the same time it issued its reservation of rights letter, National Surety filed a declaratory judgment action in King County Superior Court. Immunex continued to be represented by its independent counsel in the average wholesale

price litigation. After determining in April 2009 that National Surety had no duty to defend because the complaints did not allege claims arising out of discrimination, the trial court considered cross motions for summary judgment on the issue of defense costs. The court concluded National Surety bore responsibility for these costs incurred until the April 2009 ruling under its reservation of rights defense, subject to set-off if it could prove prejudice from Immunex's late tender at trial. The court denied National Surety's motion for reconsideration and entered partial final judgment under CR 54(b) to facilitate an appeal. Both parties appealed.

The Court of Appeals affirmed. *Nat'l Sur. Corp. v. Immunex Corp.*, 162 Wn. App. 762, 256 P.3d 439 (2011). The Court of Appeals held National Surety was liable for defense costs incurred up until the April 2009 determination of no coverage, unless it could show prejudice from late notice. *Id.* at 780. Because fact issues remained on the question of prejudice, the appellate court affirmed the denial of National Surety's summary judgment motion. *Id.* at 782. We granted National Surety's petition for review. *Nat'l Sur. Corp. v. Immunex Corp.*, 173 Wn.2d 1006, 266 P.3d 880 (2012).

II

ANALYSIS

The first question to be answered is whether an insurer may recover defense costs incurred under a reservation of rights in the event a court ultimately determines no duty to defend is owed. In answering this question, it is useful to

consider the nature of the duty to defend and the purposes of providing a defense under a reservation of rights.

## A. Overview of the Duty To Defend

Both courts and the legislature have recognized that insurance contracts are imbued with public policy concerns. *Or. Auto. Ins. Co. v. Salzberg*, 85 Wn.2d 372, 376-77, 535 P.2d 816 (1975); RCW 48.01.030 ("The business of insurance is one affected by the public interest."). Indeed,

> [i]nsurance contracts are unique in nature and purpose. An insured does not enter an insurance contract seeking profit, but instead seeks security and peace of mind through protection against calamity. The bargained-for peace of mind comes from the assurance that the insured will receive prompt payment of money in times of need.

*Love v. Fire Ins. Exch.*, 221 Cal. App. 3d 1136, 1148, 271 Cal. Rptr. 246 (1990) (citations omitted). Because security and peace of mind are principal benefits of insurance, insurers must fulfill their contractual obligations in good faith, "giving equal consideration *in all matters* to the insured's interests." *Tank v. State Farm Fire & Cas. Co.*, 105 Wn.2d 381, 386, 715 P.2d 1133 (1986).

The insurer's duty to defend is separate from, and substantially broader than, its duty to indemnify. *Truck Ins. Exch. v. VanPort Homes, Inc.*, 147 Wn.2d 751, 760, 58 P.3d 276 (2002) (citing *Hayden v. Mut. of Enumclaw Ins. Co.*, 141 Wn.2d 55, 64, 1 P.3d 1167 (2000)). The duty to indemnify applies to claims that are *actually* covered, while the duty to defend "'arises when a complaint against the insured, construed liberally, alleges facts which could, if proven, impose liability upon the insured within the policy's coverage.'" *Truck Ins. Exch.*, 147 Wn.2d at

760 (quoting *Unigard Ins. Co. v. Leven*, 97 Wn. App. 417, 425, 983 P.2d 1155 (1999)); *see also Woo v. Fireman's Fund Ins. Co.*, 161 Wn.2d 43, 53-54, 164 P.3d 454 (2007) (recognizing duty to defend when claims against the insured are *conceivably* covered).

"[I]f there is any reasonable interpretation of the facts or the law that could result in coverage, the insurer must defend." *Am. Best Food, Inc. v. Alea London, Ltd.*, 168 Wn.2d 398, 405, 229 P.3d 693 (2010). Facts that are extrinsic to the pleadings, but readily available to the insurer, may give rise to the duty. *Woo*, 161 Wn.2d at 54. Although this duty to defend is broad, it is not triggered by claims that clearly fall outside the policy. *Kirk v. Mt. Airy Ins. Co.*, 134 Wn.2d 558, 561, 951 P.2d 1124 (1998). An insurer's broad duty to defend against colorable claims tendered by the insured, particularly when the insurer elects to defend under a reservation of rights, is central to our decision. While the dissent focuses on National Surety's contractual obligations, we have repeatedly held that the scope of an insurer's duty to defend is broader than the terms of the policy.

When an insured is uncertain of its duty to defend, it may defend under a reservation of rights while seeking a declaratory judgment relieving it of its duty. *Woo*, 161 Wn.2d at 54 (citing *Truck Ins. Exch.*, 147 Wn.2d at 761). Because a reservation of rights defense is fraught with potential conflicts, it implicates an enhanced duty of good faith toward the insured. *Tank*, 105 Wn.2d at 383. But we have recognized that the risks of a reservation of rights defense are coupled with benefits:

> Although the insurer must bear the expense of defending the insured, by doing so under a reservation of rights and seeking a declaratory judgment, the insurer avoids breaching its duty to defend and incurring the potentially greater expense of defending itself from a claim of breach.

*Woo*, 161 Wn.2d at 54. Additionally, defending under a reservation of rights enables the insurer to protect its interests without facing claims of waiver or estoppel and to walk away from the defense once a court declares it owes no duty.

By insuring itself against potentially disastrous findings of breach, bad faith, waiver, and coverage by estoppel, an insurer unquestionably benefits from its decision to defend under a reservation of rights—even when, as here, a court later finds that it owes no duty to continue that defense. The dissent's conviction that National Surety was pressed into defending Immunex without receiving any benefit in return simply ignores the context in which this arrangement occurred. We are not dealing here with otter sanctuaries, marital property, or choice-of-forum rules. Instead, the insurance relationship—a relationship affected by the public interest—allows for situations such as this when an insurer makes a rational decision to protect itself against a greater downstream risk by undertaking certain costs. Unjust enrichment is simply irrelevant because any "enrichment" of Immunex was more than matched by benefit to National Surety. Our understanding of the broad and reciprocal nature of an insurer's duty to defend provides the proper context for answering the principal question in this case.

## B. May an Insurer Avoid Paying Defense Costs under a Reservation of Rights Defense by Asserting a Right to Recoupment?

National Surety contends the trial court erred in requiring it to reimburse Immunex for reasonable defense costs. Here, as a matter of contract, the relevant policy imposed on National Surety "the right and duty to . . . defend any [i]nsured against any [s]uit, seeking damages . . . [t]o which Coverage B applies." CP at 630-31 (emphasis omitted). National Surety was apparently unsure whether the complaints filed against Immunex in the average wholesale pricing litigation were covered under its policy. In light of its contractual obligations, it chose to defend, subject to a reservation of rights as allowed under *Tank* and its progeny.

National Surety now contends it should not have to pay Immunex's defense costs—despite its offer to defend subject to a reservation of rights—because the court later determined it had no duty to defend. *See, e.g.*, Suppl. Br. of Pet'r at 8 (arguing against imposing defense costs "now, after a determination of non-coverage").

Recognizing that we have not considered this issue before, National Surety relies on the leading California decision allowing recoupment of defense costs, *Buss v. Superior Court*, 16 Cal. 4th 35, 65 Cal. Rptr. 2d 366, 939 P.2d 766 (1997). There, a complaint filed against the insured asserted 27 causes of action, only one of which (defamation) fell within coverage under its insurance policy with Transamerica Insurance Company. Transamerica accepted the defense of the action as tendered, but reserved its rights to reimbursement or an allocation of

covered and noncovered claims. *Id.* at 42. Later, the insured and Transamerica entered into an agreement providing that the insured would reimburse Transamerica a proportionate amount as determined by a court. *Id.*

Eventually, the insured settled the claims against him for over $8 million. Transamerica had paid over $1 million in defense fees, only a small fraction of which was allocable to defending the defamation claim. *Id.* The court first noted that in a "mixed" action involving covered and uncovered claims, the insurer's contractual duty to defend extends only to the potentially covered claims, even though a prophylactic defense of the entire action is necessary to meaningfully defend the potentially covered claims. *Id.* at 48-49. The court held that an insurer may not seek reimbursement for defense costs as to claims that are at least potentially covered because it has bargained to bear those costs. *Id.* at 49. In such a situation, the court reasoned that "the insurer may not proceed by means of a 'reservation' of its 'right' of reimbursement" because there is no such right to reserve. *Id.* at 50. Where claims are not even potentially covered, however, the court held that an insurer may seek to recover defense costs allocable solely to such claims. *Id.* at 52-53.

Similarly, Colorado courts have endorsed reimbursement in situations in which the insurer "believes . . . it is under no obligation to defend" but defends under a reservation of rights to seek reimbursement. *Hecla Mining Co. v. N.H. Ins. Co.*, 811 P.2d 1083, 1089 (Colo. 1991).

A few other states have allowed recoupment with reasoning along these lines. *See, e.g., Sec. Ins. Co. of Hartford v. Lumbermens Mut. Cas. Co.*, 264 Conn. 688, 826 A.2d 107, 125 (2003) ("Where the insurer defends the insured against an action that includes claims not even potentially covered by the insurance policy, a court will order reimbursement for the cost of defending the uncovered claims in order to prevent the insured from receiving a windfall."); *Jim Black & Assocs. Inc. v. Transcontinental Ins. Co.*, 932 So. 2d 516, 518 (Fla. Dist. Ct. App. 2006) (holding insurer entitled to reimbursement of defense costs where duty to defend never existed and the insurer sent a reservation of rights letter and appointed mutually agreeable defense counsel); *Hebela v. Healthcare Ins. Co.*, 370 N.J. Super. 260, 851 A.2d 75, 86 (Ct. App. Div. 2004); *see also United Nat'l Ins. Co. v. SST Fitness Corp.*, 309 F.3d 914, 920 (2002) (predicting Ohio would allow recoupment where there is no duty to defend if the insurer "1) timely and explicitly reserve[s] its right to recoup the costs; and 2) provide[s] specific and adequate notice of the possibility of reimbursement" and insured fails to object); *Cincinnati Ins. Co. v. Grand Pointe, LLC*, 501 F. Supp. 2d 1145, 1168 (E.D. Tenn. 2007) (predicting Tennessee law would permit reimbursement for defense costs if insurer reserves its right to recoupment and it is later determined insurer had no duty to defend); *Illinois Union Ins. Co. v. NRI Constr. Inc.*, 846 F. Supp. 2d 1366 (2012) (predicting Georgia courts would permit reimbursement).

More recently, however, courts deciding in the first instance whether insurers can recover defense costs have generally concluded that they cannot. Their decisions provide valuable guidance.

In refusing to allocate costs between covered claims and uncovered claims in a "mixed" action, the Supreme Court of Wyoming held that "unless an agreement to the contrary is found in the policy, the insurer is liable for all of the costs of defending the action." *Shoshone First Bank v. Pac. Employers Ins. Co.*, 2 P.3d 510, 514 (Wy. 2000). The court likened a reservation of rights to recoup costs to a unilateral modification of the coverage policy. *Id.* at 515-16.

Adopting similar reasoning, the Supreme Court of Illinois held that "[a]s a matter of public policy, we cannot condone an arrangement where an insurer can unilaterally modify its contract, through a reservation of rights, to allow for reimbursement of defense costs in the event a court later finds that the insurer owes no duty to defend." *Gen. Agents Ins. Co. of Am., Inc. v. Midwest Sporting Goods Co.*, 215 Ill.2d 146, 293 Ill. Dec. 594, 828 N.E.2d 1092, 1102 (2005). Likewise, the Supreme Court of Pennsylvania reasoned:

> Where the insurance contract is silent about the insurer's right to reimbursement of defense costs, permitting reimbursement for costs the insurer spent exercising its right and duty to defend potentially covered claims prior to a court's determination of coverage . . . would amount to a retroactive erosion of the broad duty to defend . . . by making the right and duty to defend contingent upon a court's determination that a complaint alleged covered claims, and would therefore narrow Pennsylvania's long-standing view that the duty to defend is broader than the duty to indemnify.

*Am. & Foreign Ins. Co. v. Jerry's Sport Ctr., Inc.*, 606 Pa. 584, 2 A.3d 526, 544 (2010).

Following this line of reasoning, courts have refused to allow reimbursement of defense costs based on a later determination of no coverage. *See, e.g., Perdue Farms, Inc. v. Travelers Cas. & Sur. Co. of Am.*, 448 F.3d 252, 258-59 (4th Cir. 2006) (predicting Maryland law would not permit reimbursement of defense costs for noncovered claims); *Capitol Indem. Corp. v. Blazer*, 51 F. Supp. 2d 1080, 1090 (D. Nev. 1999) (holding that under Nevada law, reimbursement for defense costs is allowed only if an agreement between the parties provides for reimbursement); *Med. Liab. Mut. Ins. Co. v. Alan Curtis Enters., Inc.*, 373 Ark. 525, 285 S.W.3d 233, 237 (2008) (holding that in the absence of statutory authority, insurer may not recoup defense fees under a unilateral reservation of rights); *Shoshone First Bank*, 2 P.3d at 513-14 (disallowing allocation of defense costs where the policy did not provide for recoupment). Notably, a federal district court in Virginia recently predicted, albeit without much analysis, that Washington would disallow recoupment of defense costs incurred in defending uncovered claims. *Zurich Am. Ins. Co. v. Pub. Storage*, 743 F. Supp. 2d 548, 550-51 (E.D. Va. 2010).

By our decision today, this prediction proves accurate. Disallowing reimbursement is most consistent with Washington cases regarding the duty to defend, which have squarely placed the risk of the defense decision on the insurer's shoulders.

It is the insurer that decides whether to defend (with or without a reservation of rights) *before* any judicial determination of coverage. Providing a defense benefits the insurer by giving it the ability to monitor the defense and better limit its exposure. When an insurer defends under a reservation of rights, it insulates itself from potential claims of breach and bad faith, which can lead to significant damages, including coverage by estoppel. *Truck Ins. Exch.*, 147 Wn.2d at 761. In turn, the insured receives the benefit of a defense until a court declares none is owed. Conversely, when an insurer declines to defend altogether, it saves money on legal fees but assumes the risk it may have breached its duty to defend or committed bad faith. *See id.*; *Woo*, 161 Wn.2d at 54.

We reject National Surety's view that an insurer can have the best of both options: protection from claims of bad faith or breach without any responsibility for the costs of defense if a court later determines there is no duty to defend. This "all reward, no risk" proposition renders the *defense* portion of a reservation of rights defense illusory. The insured receives no greater benefit than if its insurer had refused to defend outright.

National Surety argues that we approved its win-win option for insurers in our decisions in *Truck Insurance* and *Kirk*. In *Truck Insurance*, we described a reservation of rights defense while seeking a declaratory judgment as "a means by which the insurer avoids breaching its duty to defend while seeking to avoid waiver and estoppel." 147 Wn.2d at 761. Quoting *Kirk*, we then observed that "'[w]hen that course of action is taken, the insured receives the defense promised

and, if coverage is found not to exist, the insurer will not be obligated to pay.'" *Id.* (quoting *Kirk*, 134 Wn.2d at 563 n.3). National Surety relies on ambiguity in the phrase "will not be obligated to pay" as supporting its contention that an insurer need not pay for defense costs incurred before a court determination of no coverage.

Taken in context, the language in *Kirk* and *Truck Insurance* does not support National Surety's view. After obtaining a declaration of noncoverage, an insurer "will not be obligated to pay" *from that point forward.* Any other rule would be at odds with our observation that, under a reservation of rights defense, "the insured *receives* the defense promised"—at least until the determination of noncoverage. *Kirk*, 134 Wn.2d at 563 n.3 (emphasis added). If there were any question after *Kirk* and *Truck Insurance* that a reservation of rights defense must be a real defense, there is no question after *Woo* that "the insurer must bear the expense of defending the insured." *Woo*, 161 Wn.2d at 54.

If National Surety were allowed to recover defense costs, its "offer" to defend would serve solely to protect *itself* from claims of breach while placing the full risk of a determination of noncoverage on its insured. This provides no security to the insured. As the Third Circuit Court of Appeals has explained:

> A rule permitting such recovery would be inconsistent with the legal principles that induce an insurer's offer to defend under reservation of rights. Faced with uncertainty as to its duty to indemnify, an insurer offers a defense under reservation of rights to avoid the risks that an inept or lackadaisical defense of the underlying action may expose it to if it turns out there is a duty to indemnify. At the same time, the insurer wishes to preserve its right to contest the duty to indemnify if the defense is unsuccessful. Thus, such an offer is made at least as much for the insurer's

own benefit as for the insured's. If the insurer could recover defense costs, the insured would be required to pay for the insurer's action in protecting itself against the estoppel to deny coverage that would be implied if it undertook the defense without reservation.

*Terra Nova Ins. Co. v. 900 Bar, Inc.*, 887 F.2d 1213, 1219-20 (3d Cir. 1989) (footnote and citations omitted).

Additionally, allowing recoupment to be claimed in a reservation of rights letter would allow the insurer to impose a condition on its defense that was not bargained for.

> "The question as to whether there is a duty to defend an insured is a difficult one, but because that is the business of an insurance carrier, it is the insurance carrier's duty to make that decision. If an insurance carrier believes that no coverage exists, then it should deny its insured a defense at the beginning instead of defending and later attempting to recoup from its insured the costs of defending the underlying action. Where the insurance carrier is uncertain over insurance coverage for the underlying claim, the proper course is for the insurance carrier to tender a defense and seek a declaratory judgment as to coverage under the policy. However, to allow the insurer to force the insured into choosing between seeking a defense under the policy, and run the potential risk of having to pay for this defense if it is subsequently determined that no duty to defend existed, or giving up all meritorious claims that a duty to defend exists, places the insured in the position of making a Hobson's choice. Furthermore, endorsing such conduct is tantamount to allowing the insurer to extract a unilateral amendment to the insurance contract. If this became common practice, the insurance industry might extract coercive arrangements from their insureds, destroying the concept of liability and litigation insurance."

*Midwest Sporting Goods*, 828 N.E.2d at 1102 (quoting *Shoshone First Bank*, 2 P.3d at 516). Forcing an insured to make this "Hobson's choice" is inconsistent with our holding in *Tank*, which requires an insurer to give its insured's interests equal consideration. *See Tank*, 105 Wn.2d at 385-86.

Disallowing recoupment in this instance does not leave insurers without options to protect their interests. An insurer is not forced to undertake a defense if it believes the claims asserted against the insured are not covered at all. *See id.* at 391. Here, however, National Surety *did* choose to defend Immunex, following the reservation of rights approach our precedent allows. It cannot claim the benefits of doing so and simultaneously avoid the costs.

We hold that insurers may not seek to recoup defense costs incurred under a reservation of rights defense while the insurer's duty to defend is uncertain.[2] Accordingly, National Surety may be held responsible for the reasonable defense costs incurred by its insured until the trial court determined National Surety had no duty to defend.[3]

We next consider whether National Surety's duty to defend may be excused because of Immunex's untimely tender of the claims.

---

[2] We are aware of contrary dicta in *Holly Mountain Resources, Ltd. v. Westport Insurance Corp.*, 130 Wn. App. 635, 652 n.8, 104 P.3d 725 (2005), which appears to support National Surety's position. There, the court posited that "[a] reservation of rights is a means by which the insurer conditionally defends its insured, subject to potential reimbursement by the insured upon later discovery that there was no duty to defend." *Id.* We disaffirm this language in *Holly Mountain* in line with our holding. In doing so, we note that our state's leading insurance law treatise refers to *Holly Mountain*'s suggestion that reimbursement is allowed under a unilateral reservation of rights as "erroneous[]" and "wholly inconsistent" with the principles articulated in *Tank*. THOMAS V. HARRIS, WASHINGTON INSURANCE LAW § 17.01, at 17-1, 17-2 (3d ed. 2010).

[3] It makes no difference that National Surety never actually paid any defense costs before the declaration of noncoverage on April 14, 2009. We agree with the Court of Appeals that this fact "cannot support a different result here than in a case where the insurer had already provided a defense." *Immunex*, 162 Wn. App. at 777.

## C. Under What Circumstances Does an Insured's Late Tender
Relieve the Insurer of its Duty To Defend?

National Surety argues it cannot be held to pay for defense costs when Immunex breached the policy by providing late notice of the underlying litigation. There are two components to its argument. First, National Surety argues that no duty to defend arises until a claim is tendered, and therefore it cannot be responsible for defense costs incurred before this point. Second, it contends that Immunex's late tender caused prejudice as a matter of law so that it is entitled to summary judgment relieving it of any responsibility for defense costs.

In support of its argument that no duty to defend arose before tender, National Surety cites to *Leven*, 97 Wn. App. 417. There, this court noted that "an insurer's duty to defend does not arise unless the insured specifically asks the insurer to undertake the defense of the action." *Id.* at 426-27. National Surety interprets this language to mean that an insurer is exempt from paying pretender defense costs. But *Leven* clearly states that an insured's late tender in violation of the insurance contract does not relieve the insurer of its duty to defend unless it proves *actual and substantial prejudice* from late notice. *Id.* at 427.

*Leven* is consistent with our decision in *Mutual of Enumclaw Insurance Co. v. USF Insurance Co.*, 164 Wn.2d 411, 421, 191 P.3d 866 (2008), which recognized that "[t]he duties to defend and indemnify do not become *legal obligations* until a claim for defense or indemnity is tendered." National Surety seems to interpret this statement to mean that it cannot be legally obligated to pay

pretender defense costs. All that *USF* establishes, however, is that a "'breach of the duty to defend cannot occur before tender.'" *Id.* (quoting *Griffin v. Allstate Ins. Co.*, 108 Wn. App. 133, 141, 29 P.3d 777, 36 P.3d 552 (2001)). In noting that the duty to defend is not a legal obligation until tender, the court was stating the rather obvious proposition that in terms of timing, the duty to defend or indemnify is not *legally enforceable* until the insured has apprised its insurer that it seeks its performance. Nothing in our opinion in *USF* suggests that pretender defense costs are not recoverable once tender has been made.

In fact, the duty to defend arises not at the moment of tender, but upon the filing of a complaint alleging facts that could potentially require coverage. *Truck Ins. Exch.*, 147 Wn.2d at 760. As the Court of Appeals noted in *Griffin*, "Certainly breach of the duty to defend cannot occur before tender. The scope of a duty, however, is defined not by its breach, but by the contract." 108 Wn. App. at 141. Accordingly, an insured can recover pretender fees and costs except where a late tender prejudiced the insurer. *Id.* at 139.[4]

As in other contexts involving breach of policy provisions by the insured, the insurer must show that late notice actually and substantially prejudiced its interests before performance of its duties will be excused. *USF*, 164 Wn.2d at 426.

---

[4] Notably, National Surety's reservation of rights letter recognized its need to establish prejudice before being excused from its duty to defend based on the untimely tender. *See, e.g.*, CP at 1067 ("[T]o the extent that breach of the policy conditions caused prejudice to [National Surety]—and it seems likely that [National Surety] has been prejudiced by the late notice—Immunex has forfeited coverage under the policies."); CP at 1074 ("To the extent Immunex's breach of those conditions has caused prejudice to [National Surety], the breach will result in a loss of coverage.").

"Prejudice" means a damage or detriment to one's legal claims. BLACK'S LAW DICTIONARY 1299 (9th ed. 2009). In line with this definition, to establish prejudice an "insurer must prove that an insured's breach of a notice provision had an identifiable and material detrimental effect on its ability to defend its interests." *USF*, 164 Wn.2d at 430. This rule will require a different showing depending on the interest at stake. *See id.* Several of the factors mistakenly seized upon by the dissent as free-floating "equitable considerations" are in fact relevant to a showing of actual and substantial prejudice. *See* dissent at 11-12 (failure to cooperate with the insurer or comply with policy terms); *id.* at 12-13 (long delay).

National Surety insists that Immunex's late tender caused prejudice as a matter of law. In this regard, National Surety argues that "prejudice to the insurer is established as a matter of law when, as here, an insured selectively delays tender of a claim for years in order to control the defense and settlement of the claims without the consent of the insurer." Br. of Resp't/Cross-Appellant at 45-46.

It is possible a declaratory judgment might have been obtained much earlier had Immunex promptly tendered the defense. However, in its alternative motion for summary judgment, National Surety asserted it was not liable for *any* defense costs.[5] Simply showing that tender was late fails to establish, as a matter of law, that timely tender would have prevented incurring *any* defense costs. Indeed, the

---

[5] National Surety argued Immunex forfeited its right to coverage by belatedly tendering the defense of the average wholesale pricing litigation. CP at 1170, 1177. As already discussed, however, an insured's breach of a policy provision does not result in a forfeiture unless, and then only to the extent, that the breach prejudices the insurer.

fact that National Surety offered to pay for Immunex's defense cuts against this contention: it is clear that National Surety would have incurred *some* defense costs, regardless of the time of tender. Discovery remains to be conducted, and questions of prejudice generally involve disputed facts. *See USF*, 164 Wn.2d at 427 ("Whether or not late notice prejudiced an insurer is a question of fact, and it will seldom be decided as a matter of law."). Summary judgment on the question of prejudice is inappropriate.

III

CONCLUSION

When an insurer undertakes to defend its insured under a reservation of rights, it must pay defense costs until it obtains a judicial declaration that it owes no duty to defend. It cannot unilaterally disavow its financial responsibility in a reservation of rights letter. An insurer who owes a duty to defend may nonetheless be excused from its obligation to the extent it demonstrates actual and substantial prejudice flowing from its insured's untimely tender of the claim.

We affirm the trial court's orders requiring National Surety to reimburse Immunex for reasonable defense fees incurred before the determination of no coverage and denying summary judgment on the late tender question. We remand for further proceedings consistent with this opinion.

_____
Stephens, J.

WE CONCUR:

_____

_____
Fairhurst, J.

_____
Chambers, J.P.T.

_____

_____
Owens, J.

_____

No. 86535-3

WIGGINS, J. (dissenting)—Rather than focus on the equities of the case at hand, the majority seizes on this opportunity to pronounce that insurers who defend under a reservation of rights may never recoup defense costs after a court determines that an insurance policy does not cover an insured's claim and that the insurer never had a duty to defend. This rule is both overly broad and unnecessary, and in the context of this case, it is unjust. I dissent.

I would reverse the Court of Appeals in part[1] and remand with instructions to the trial court to vacate its order granting summary judgment to Immunex on the issue of defense costs. The trier of fact, not this court, should weigh the facts of this case to decide whether National Surety should be forced to pay for Immunex's defense costs.

## DISCUSSION

The majority concludes that insurers may never recoup defense costs paid under a reservation of rights because a defense under a reservation of rights protects insurers by limiting their liability on claims of bad faith or breach, rendering "the defense portion of a reservation of rights defense illusory," majority at 13 (emphasis omitted). But the out-of-state authority the majority says provides "valuable guidance," majority at 11, actually gives little guidance at all. And even the

---

[1] I agree with the Court of Appeals and with the majority that summary judgment is inappropriate on the issue of prejudice resulting from Immunex's late tender of its claim. *See Nat'l Sur. Corp. v. Immunex Corp.*, 162 Wn. App. 762, 782, 256 P.3d 439 (2011); majority at 19-20.

cases that do provide some support for the majority's position involve facts and circumstances very distinct from those at issue here.

More importantly, the majority fails to acknowledge that its rule—that insurers may never recoup defense costs paid under a reservation of rights even when it is later determined that the insurer owed no duty to defend—is the minority view. The majority does not mention that a majority of American courts have allowed insurance companies to recoup reservation-of-rights defense costs and overlooks the leading theory, unjust enrichment, that most of these jurisdictions, and the *Restatement (Third) of Restitution and Unjust Enrichment*, have invoked to justify insurer recoupment.

This court should follow the majority rule and majority rationale, opting to engage in an analysis based on fairness under the circumstances of this case to determine whether National Surety's payment of Immunex's defense costs would work an unjust enrichment in Immunex's favor. The majority does not acknowledge these considerations and would allow Immunex and other similarly situated insureds to receive defense costs, after a determination that no defense is owed, in exchange for nothing at all. Instead of announcing such a sweeping and categorical rule that ignores the unique facts at hand, Washington courts should make individualized determinations on the recoupment issue by balancing the equities of each case.

In this case, because individualized determinations on the issue of recoupment reveal several genuine issues of material fact, summary judgment on the issue of defense costs was inappropriate. We should remand this case for

consideration of the facts that bear on whether payment of Immunex's defense costs would result in an unjust enrichment to the detriment of National Surety.

I.  A majority of American jurisdictions allow recoupment under an unjust enrichment theory

The majority ignores the fact that a majority of American jurisdictions that have considered the recoupment issue have permitted recoupment.[2] The jurisdictions that have allowed recoupment have largely done so on the basis of unjust enrichment, holding that insureds who receive their defense costs for uncovered claims are unjustly enriched because they gain a benefit they never bargained for. This is also the position taken by the drafters of the *Restatement (Third) of Restitution and Unjust Enrichment.*

The leading case allowing recoupment, *Buss v. Superior Court,* 16 Cal. 4th 35, 65 Cal. Rptr. 2d 366, 939 P.2d 766 (1997), held that forcing an insurer who reserves its right to recoup defense costs paid for uncovered claims would work an unjust "'enrichment' of the insured by the insurer through the insurer's bearing of unbargained-for defense costs." 939 P.2d at 777. Following the line of reasoning in *Buss,* several other courts the majority cites have recognized the importance of

---

[2] A couple of the cases cited by the majority for its position recognize that the majority rule allows insurers to recoup costs under a reservation of rights for uncovered claims. *See Med. Liab. Mut. Ins. Co. v. Alan Curtis Enters., Inc.,* 373 Ark. 525, 285 S.W.3d 233, 235 (2008); *Shoshone First Bank v. Pac. Employees Ins. Co.,* 2 P.3d 510, 514 (Wyo. 2000); *see also* Michael M. Marick, *An Insurer's Right to Recoup Non-Covered Defense Costs and Indemnity Payments, in* NEW APPLEMAN ON INSURANCE: CURRENT CRITICAL ISSUES IN INSURANCE LAW 3 (Jul. 2007) ("A majority of the state courts to have considered the issue of whether an insurer may recoup defense costs expended on behalf of its insured have allowed recoupment."); *see also id.* at 23-37 (50-state survey demonstrating a majority of American jurisdictions allow recoupment).

reimbursement under an unjust enrichment theory. As the Connecticut Supreme Court noted,

> A cause of action for reimbursement is cognizable to the extent required to ensure that the insured not reap a benefit for which it has not paid and thus be unjustly enriched. Where the insurer defends the insured against an action that includes claims not even potentially covered by the insurance policy, a court will order reimbursement for the cost of defending the uncovered claims in order to prevent the insured from receiving a windfall.

*Sec. Ins. Co. of Harford v. Lumbermens Mut. Cas. Co.*, 264 Conn. 688, 826 A.2d 107, 125 (2003). Similarly, in *Hebela v. Healthcare Insurance Co.*, the Appellate Division of the New Jersey Superior Court held that "the right of reimbursement exists because the insured would be unjustly enriched in benefiting by, without paying for, the defense of a non-covered claim." 370 N.J. Super. 260, 851 A.2d 75, 86 (Ct. App. Div. 2004); *see also Cincinnati Ins. Co. v. Grand Pointe, LLC*, 501 F. Supp. 2d 1145, 1169 (E.D. Tenn. 2007) ("It would be inequitable for Defendants to retain the benefits of the defense [of claim not covered in the insurance policy] without repayment of the defense costs."). These cases hold that insurers that defend subject to a reservation of rights, despite believing a claim is not covered, have an equitable right to reimbursement under an unjust enrichment theory if it turns out the claim was not covered by the pertinent insurance policy.

The *Restatement (Third) of Restitution and Unjust Enrichment* also endorses the view that insurers should be able to pursue a restitution claim in this scenario. The *Restatement* provides:

> If one party to a contract demands from the other a performance that is not in fact due by the terms of their agreement, under circumstances making it reasonable to accede to the demand rather than to insist on

4

an immediate test of the disputed obligation, the party on whom the demand is made may render such performance under protest or with reservation of rights, preserving a claim in restitution to recover the value of the benefit conferred in excess of the recipient's contractual entitlement.

RESTATEMENT (THIRD) OF RESTITUTION AND UNJUST ENRICHMENT § 35(1), at 571 (2011).[3] The American Law Institute included a specific illustration very similar to the facts of this case that clearly supports recoupment of defense costs to insurers that defend under a reservation of rights:

> [Insured] repudiates the obligation to reimburse [Insurer], no matter what the outcome, but accepts [Insurer]'s defense of [Plaintiff]'s claims. [Insurer] proceeds to defend [Insured], having notified [Insured] that it is acting pursuant to a unilateral reservation of rights. [Insurer] subsequently obtains a declaratory judgment that [Plaintiff's] lawsuit is outside the scope of [Insurer]'s duty to defend, because it states no claims that even potentially covered under the policy. [Insurer] has a claim under this section to recover the amounts reasonably expended in the defense of the [Plaintiff's] lawsuit.

*Id.* at 580, cmt. c, illus. 12. The Reporter's Note following the illustrations indicates that this scenario is "based on" *Buss* and other similar cases, concluding that "[r]estitution then permits the insurer to recover that part of the benefit conferred on the policyholder that exceeds the insurer's obligation." *Id.* at 585, Reporter's Note on cmt. c.

Given that the leading theory permitting recoupment in this context, unjust enrichment, is found both in reported cases and the *Restatement*, the majority's

---

[3] This court has repeatedly relied on the current and previous iterations of the *Restatement of Restitution* for guidance in a variety of contexts in which issues of unjust enrichment and quasi contractual claims arise. *See, e.g., Young v. Young*, 164 Wn.2d 477, 489-91, 191 P.3d 1258 (2008); *Bank of Am., N.A. v. Prestance Corp.*, 160 Wn.2d 560, 576 n.13, 160 P.3d 17 (2007); *Nelson v. Appleway Chevrolet, Inc.*, 160 Wn.2d 173, 187-88, 157 P.3d 847 (2007); *In re Marriage of Langham & Kolde*, 153 Wn.2d 553, 566-67, 106 P.3d 212 (2005); *Chandler v. Wash. Toll Bridge Auth.*, 17 Wn.2d 591, 601, 137 P.2d 97 (1943).

assertion that unjust enrichment is "simply irrelevant," majority at 7, is simply disingenuous. The majority fixates on the benefit that National Surety receives by providing a defense under a reservation of rights, concluding that Immunex's enrichment is matched by National Surety's avoidance of claims of breach, bad faith, and coverage by estoppel. *Id.* But it is baffling to say that National Surety is benefited or enriched by complying with the decisional law of this court. National Surety, uncertain of its duty to defend, did exactly as we have instructed: it offered to defend under a reservation of rights to ensure that it complied with its obligation to its insured. *See Woo v. Fireman's Fund Ins. Co.*, 161 Wn.2d 43, 54, 164 P.3d 454 (2007); *Truck Ins. Exch. v. VanPort Homes, Inc.*, 147 Wn.2d 751, 761, 58 P.3d 276 (2002); *Kirk v. Mt. Airy Ins. Co.*, 134 Wn.2d 558, 562, 951 P.2d 1124 (1998); *Tank v. State Farm Fire & Cas. Co.*, 105 Wn.2d 381, 386-87, 390, 715 P.2d 1133 (1986). National Surety did not receive a "benefit"; rather, it prudently made certain that it complied with its duties under the law.

The trial court granted summary judgment in National Surety's favor because it determined that "National Surety ha[d] no duty to defend Immunex with regard to any of the claims made against Immunex in the actions tendered to National Surety." Clerk's Papers (CP) at 1023. Because National Surety never had a duty to defend Immunex under the terms of the insurance policy, ordering National Surety to pay Immunex's defense costs, as the majority does today, gives Immunex something

6

that it never bargained for in its insurance contract.[4] I turn to Washington law to consider whether majority's opinion would result in Immunex's unjust enrichment.

## II. Unjust enrichment theory provides a more flexible and equitable approach to respond to the various facets each case presents

Unjust enrichment is an equitable doctrine that allows recovery for the value of benefits retained absent a contractual relationship, as required by the notions of fairness and justice. *Young v. Young*, 164 Wn.2d 477, 484, 191 P.3d 1258 (2008). "'[E]quitable doctrines grew naturally out of the humane desire to relieve under special circumstances from the harshness of strict legal rules.'" *Kingery v. Dep't of Labor & Indus.*, 132 Wn.2d 162, 173, 937 P.2d 565 (1997) (quoting *Ames v. Dep't of Labor & Indus.*, 176 Wash. 509, 513, 30 P.2d 239 (1934)). When a court sits in equity, it has great discretion in considering the complex factual matters involved in each case to "fashion[] broad remedies to do substantial justice to the parties." *Esmieu v. Hsieh*, 92 Wn.2d 530, 535, 598 P.2d 1369 (1979).

Our case law applying equitable principles supports a balancing approach that weighs case-specific facts to determine whether a party has been unjustly enriched. Most recently in *Young*, this court considered work performed by Jim and

---

[4] The majority accuses me of "focus[ing] on National Surety's contractual obligations" instead of on the proposition that "the scope of an insurer's duty to defend is broader than the terms of the policy." Majority at 6. But my focus is on unjust enrichment, the purpose of which is to remedy the value of benefits undeservedly conferred *outside* the contractual relationship. As to the majority's statement that an insurer's duty to defend is broader than the policy's terms, I am mystified. While I agree with the majority's general proposition that an insurer's duty to defend is broader than its duty to indemnify, *see* majority at 5 (citing *Truck Ins. Exch.*, 147 Wn.2d at 760 (citing *Hayden v. Mut. of Enumclaw Ins. Co.*, 141 Wn.2d 55, 64, 1 P.3d 1167 (2000))), I am aware of no authority—and the majority provides none—that would broaden the duty to defend to matters beyond the policy's terms.

7

Shannon Young to prepare Judith Young's otter sanctuary.[5] 164 Wn.2d at 481. Later, when Judith Young refused to pay Jim and Shannon, the trial court determined that it would be unjust for Judith Young to retain the value of Jim and Shannon's work without compensation. *Id.* at 482. Under the unjust enrichment theory, the trial court allowed Jim and Shannon to recover the market value of their improvements but deducted general contractor's costs pursuant to a cost expert's report. *Id.* We held that the trial court used the improper measure of unjust enrichment recovery by deducting the general contractor's costs without analysis of the circumstances: "[t]he trial court erred in totally deducting all of these costs without an examination of whether these costs had some consequential relationship to the value of the benefit conferred." *Id.* at 488-89. *Young* demonstrates the importance of placing the unjust enrichment inquiry into the unique factual context of every case.

We engage in a careful balancing of the facts and circumstances in other equitable contexts as well. *See, e.g., Gildon v. Simon Prop. Grp., Inc.*, 158 Wn.2d 483, 495, 145 P.3d 1196 (2006) (noting that the court looks to equity and good conscience that calls for determinations dependent on the facts and circumstances of individual cases when considering joinder of a necessary party under CR 19); *In re Pennington*, 142 Wn.2d 592, 603, 14 P.3d 764 (2000) (considering the various factors under *Connell v. Francisco*, 127 Wn.2d 339, 898 P.2d 831 (1995), to determine whether and how to equitably distribute parties' property at the end of a

---

[5] The majority ignores *Young*, this court's most recent opinion discussing the principle of unjust enrichment, because it concerned an otter sanctuary instead of an insurance policy. Majority at 7. It should go without saying that *Young* and other cases are cited for the principles of law they espouse, not for factual distinctions that make no difference.

meretricious relationship in order to avoid unjust enrichment); *Myers v. Boeing Co.*, 115 Wn.2d 123, 138, 794 P.2d 1272 (1990) (holding that balancing various factors to determine whether to apply forum non conveniens "will lead to fair and equitable results"); *Tyler Pipe Indus., Inc. v. Dep't of Revenue*, 96 Wn.2d 785, 792, 638 P.2d 1213 (1982) ("[S]ince injunctions are addressed to the equitable powers of the court, the [injunction] criteria must be examined in light of equity including balancing the relative interests of the parties."). In short, as in other equitable contexts, when considering unjust enrichment, courts balance the unique circumstances of each case to determine whether one party will receive a benefit to which, under notions of fairness and justice, it is not entitled.

Turning to the mechanics of the claim itself, in order to establish an unjust enrichment claim, the plaintiff must demonstrate that "(1) the defendant receive[d] a benefit, (2) the received benefit is at the plaintiff's expense, and (3) the circumstances make it unjust for the defendant to retain the benefit without payment." *Young*, 164 Wn.2d at 484-85. As a result of the majority's opinion, Immunex will receive the benefit of payment for its defense costs at National Surety's expense. Thus, the first two elements of National Surety's unjust enrichment claim would be easily met. The only remaining issue—whether circumstances would make it unjust for Immunex to receive payment of its litigation costs instead of paying for them itself—depends on a careful balancing of the equities in this case.

III.  Genuine issues of material fact exist regarding whether National Surety's payment of Immunex's defense costs would unjustly enrich Immunex

Several considerations would assist in determining whether forcing National Surety to pay Immunex's defense costs would result in Immunex's unjust enrichment. These considerations should be carefully balanced before disposal on summary judgment.

A. *Timing of Payment*

"Recoupment" of National Surety's payments for Immunex's defense is not an actual issue in this case. At least at the time the trial court determined the summary judgment motion on defense costs, National Surety had not paid for any of Immunex's legal defense. Thus, the real issue is whether National Surety now must pay for defense costs that have already been determined to fall outside National Surety's duty to defend.

The majority states that "[i]t makes no difference that National Surety never actually paid any defense costs before the declaration of noncoverage on April 14, 2009." Majority at 16 n.3. The Court of Appeals came to the same conclusion. *Nat'l Sur. Corp.*, 162 Wn. App. at 777. I fail to see how this could be so. This is not a clear situation where National Surety is at fault for not paying defense costs. In fact, the record reveals that delay over executing a confidentiality agreement was at least one reason that attorney bills were not more promptly produced to National Surety. *See* CP at 1199 (letter from Immunex's counsel to National Surety's counsel on April 28, 2009, stating, "for some time we have worked to put in place a confidentiality agreement to allow Immunex to produce to National Surety the attorney bills that it

has requested in connection with making payment to Immunex"). National Surety actually requested that Immunex provide attorney billings in its March 2008 reservation of rights letter.

If National Surety's failure to pay costs was a result of its lack of access to billings through no fault of its own, it seems particularly unjust to force National Surety to pay defense costs now, after a determination that it never owed any defense costs. This is just the type of fact-specific inquiry that should enter the calculus in determining whether National Surety's payment for defense costs at this late date would unjustly enrich Immunex.

### B. Participation in the defense and compliance with policy terms

When insurers are uncertain regarding their duty to defend, Washington law permits them to defend under a reservation of rights and simultaneously seek a declaratory judgment that they have no duty to defend. *Woo*, 161 Wn.2d at 54. Upon providing a defense subject to a reservation of rights, insurers are generally able to participate in forming the defense by hiring lawyers, making budgetary determinations, and gathering additional information regarding the claims.

An insurer's participation in setting up a defense to claims against its insured is an important consideration in determining whether insurers should be permitted to recoup defense costs paid under a reservation of rights. This is so because it comprises an essential part of the insurer's bargain with its insured. In this case, Immunex's policies provided that Immunex must "[c]ooperate with [National Surety] in the investigation or settlement of any claim; or defense of [Immunex] against any Suit . . . [m]ake no admission of liability . . . [i]ncur no expense . . . [a]ssume no

11

obligation . . . without [National Surety's] consent." CP at 639. Immunex appears to have violated this portion of its policy, at least in one respect, when it sent a letter to National Surety "to inform . . . that Immunex is in the process of negotiating a settlement of *State of California*, pursuant to which Immunex would pay an amount within the limits of its insurance coverage." CP at 584, 1059. Informing National Surety of its plans for imminent settlement does not seem to comply with the policy terms that National Surety bargained for: at the very least, Immunex was required to cooperate with National Surety and keep it informed of important developments like settling lawsuits.[6] Such facts should be considered in determining whether Immunex would be unjustly enriched if National Surety is now required to pay for defense costs—including costs of settlements—despite perhaps never obtaining the benefit of its bargain to participate in providing a defense.

## C. Unreasonable delay

The facts of this case demonstrate a protracted claim process. In 2001, Immunex first notified National Surety of civil investigations. National Surety promptly responded, requesting more information. In 2003, Immunex provided a status report, stating that it would forward any complaints against it as soon as they were served. More than three years elapsed before Immunex tendered its claims. Eighteen more months passed while Immunex and National Surety exchanged correspondence regarding whether Immunex's claims were covered until National Surety agreed to provide a reservation-of-rights defense and instituted the instant

---

[6] RCW 48.18.520 provides in pertinent part that "[e]very insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy . . . ."

declaratory judgment action in King County Superior Court in March 2008. Immunex sought a stay of the declaratory judgment action resulting in another year before the trial court made its determination that National Surety owed no duty to defend.

I am not suggesting that any of the delays in this claim process were unreasonable, but only that this is a valid question that remains open. The majority and the Court of Appeals acknowledge that Immunex's delay in tender should be considered as to whether National Surety was prejudiced. *Nat'l Sur. Corp.*, 162 Wn. App. at 782; majority at 19. Delay should also be considered in the context of a restitutionary claim for recoupment of defense costs.

### D. Entitlement to recover for the same loss under other policies

The record before us does not disclose much regarding Immunex's policy with National Surety, other than that there is an excess policy, not at issue here, and an umbrella policy, under which Immunex sought coverage. Whether such policies cover claims in the first instance depends on whether a primary policy is in place, actually applies, or is exhausted. *See Hodge v. Raab*, 151 Wn.2d 351, 355, 88 P.3d 959 (2004) (quoting RCW 48.22.030(2), which describes "umbrella policies" as policies that apply only in excess to primary insurance); *MacKenzie v. Empire Ins. Cos.*, 113 Wn.2d 754, 757-59, 782 P.2d 1063 (1989) (describing differences between umbrella policies and general liability policies). If an insured may recover for the same loss from several different insurance providers but opts to pursue only one of them, that fact should certainly be considered as to whether the insured would be unjustly enriched by forcing the insurer to foot the bill, especially where the insurer had no duty to do so.

13

## E. Good faith

Washington insurance statutes require that "all persons be actuated by good faith, abstain from deception, and practice honesty and equity in all insurance matters. Upon the insurer, the insured, their providers, and their representative rests the duty of preserving inviolate the integrity of insurance." RCW 48.01.030. Because the legislature has recognized the central importance of good faith in the general context of insurance, whether insurers and insureds meet their good faith standard should certainly enter into the determination of whether an insurer may recover defense costs paid under a reservation of rights.

## F. Disparity in bargaining power between the parties

At least in the context of awarding attorney fees to insureds that are forced to litigate against their insurers for coverage determinations, we have recognized a "disparity of bargaining power between an insurance company and its policyholder." *Olympic S.S. Co. v. Centennial Ins. Co.*, 117 Wn.2d 37, 52, 811 P.2d 673 (1991). This disparity should also be taken into account in a situation like the one before us: if there is a significant imbalance of power between insurer and insured, the insurer's ability to recoup defense expenditures under a reservation of rights should be limited accordingly.

At the same time, this court has indicated that the power differential is at its greatest when insurance companies use standardized, nonnegotiable contracts presented on a take-it-or-leave-it basis. *McGreevy v. Or. Mut. Ins. Co.*, 128 Wn.2d 26, 35, 904 P.2d 731 (1995). This suggests that when the parties have the ability to negotiate the terms of an insurance policy on relatively equal footing, the power

14

differential would change significantly. Where the insured is, as here, a sophisticated corporation with ready access to legal advice that negotiates an insurance policy in its corporate capacity, one would expect the power differential to be less than for an individual purchasing an insurance policy for personal use. In short, the parties' relative bargaining power is another important factor in considering whether an insurer can assert a restitution claim to recoup defense costs paid under a reservation of rights.

Though by no means exhaustive, the factors discussed here should be used to determine whether insurance companies that provide defenses subject to reservations of rights may state restitution claims to recover defense costs paid to their insureds if it turns out they never had a duty to defend in the first place. In this case, these fact-specific considerations indicate that a genuine issue of material fact still exists whether Immunex's enrichment would be unjust. Summary judgment on the defense cost issue was therefore inappropriate.

IV. The cases cited by the majority in support of categorically denying recoupment are unpersuasive and distinguishable

The majority's conclusion is based on an assumption that the issue before us is a binary one—either recoupment is allowed in all cases or it is allowed in none.[7]

---

[7] The majority also makes the unsupported assertion that "[m]ore recently . . . courts evaluating whether insurers can recover defense costs have generally concluded that they cannot." Majority at 11. The majority's perception of a recent trend to disallow recoupment is belied by a number of recent cases reaching the opposite result. *See, e.g., Ill. Union Ins. Co. v. NRI Constr., Inc.,* 846 F. Supp. 2d 1366, 1377 (N.D. Ga. 2012); *EMC Ins. Cos. v. Mid-Continent Cas. Co.,* 884 F. Supp. 2d 1147, 1173 (D. Colo. 2012) ("[W]here an insurer discharged its duty to defend and coverage was nonexistent, it may seek reimbursement for those costs it expended in defending the insured."); *Dupree v. Scottsdale Ins. Co.,* 947 N.Y.S.2d 428, 429, 96 A.D.3d 546 (N.Y. App. Div. 2012) ("Absent a final adjudication that plaintiff's alleged wrongdoing does indeed fall under the policy's exclusions, the policy

*See* majority at 10-11. A closer examination of the cases the majority relies on demonstrates that the majority's assumption oversimplifies and inaccurately portrays the pertinent case law. The cases cited by the majority are largely a grab bag of unrelated theories and distinguishable facts, never leading to any discernible coherent theory on which to deny recoupment.

The majority cites several cases for the proposition that permitting recoupment of defense costs under a reservation of rights would permit insurers to "'unilaterally modify its contract.'" Majority at 11 (quoting *Gen. Agents Ins. Co. of Am., Inc. v. Midwest Sporting Goods Co.*, 215 Ill.2d 146, 293 Ill. Dec. 594, 828 N.E.2d 1092, 1102 (2005); *see also* majority at 11-12. Although *Midwest Sporting Goods* held that it could not "condone an arrangement where an insurer can unilaterally modify its contract, through a reservation of rights, to allow for reimbursement of defense costs in the event a court later finds that the insurer owes no duty to defend," 828 N.E.2d at 1102, none of the other cases the majority relies on provides such unequivocal support to sustain, factually or legally, a categorical rule against recoupment.[8]

---

remains in effect and defendant is required to pay attorneys' fees and defense costs, subject to recoupment in the event it is ultimately determined that the exclusions apply." (citation omitted)); *Maxum Indem. Co. v. Eclipse Mfg. Co.*, 848 F. Supp. 2d 871, 884 (N.D. Ill. 2012) (holding that insurer is entitled to reimbursement of its costs because it provided a defense even though it had no duty to defend).

[8] Even *Midwest Sporting Goods* is factually distinct. There, Midwest Sporting Goods timely tendered defense of the suit to its liability carrier, Gainsco, which denied coverage. 828 N.Ed.2d at 1093. After the complaint against it was amended, Midwest Sporting Goods again timely sought coverage from Gainsco, which offered to defend under a reservation of rights that would have permitted it to recoup any defense costs that were later determined that Gainsco did not owe. *Id.* at 1093-94. Unlike this case, the tender of claims was immediate and Gainsco actually paid defense costs and participated in the litigation as it

16

In *Shoshone First Bank v. Pacific Employers Insurance Co.*, 2 P.3d 510, 512 (Wyo. 2000), the Wyoming Supreme Court rejected recoupment where there was at least one covered claim and the insurer had already paid for the defense. The court reasoned that the insurance policy did not distinguish "between covered and non-covered claims so far as the defense of those claims [was] concerned." *Id.* at 515. Thus, the *Shoshone* court felt that allowing recoupment for all defense costs when some claims were covered under the policy would allow the insurer to unilaterally modify the insurance contract. *Id.* Unlike *Shoshone*, there was no mixture of covered and uncovered claims here, just a claim that was never covered by the parties' insurance policy.

Several of the majority's cases are readily distinguished by the fact that those insurers participated in selecting counsel and reviewing bills, and thus benefited from providing a defense. *See Am. & Foreign Ins. Co. v. Jerry's Sport Ctr., Inc.*, 606 Pa. 584, 2 A.3d 526, 544-45 (2010) (noting that the insurer "had not only the duty to defend, but the *right* to defend under the insurance contract. This arrangement benefited both parties." (emphasis added)); *Terra Nova Ins. Co. v. 900 Bar, Inc.*, 887 F.2d 1213, 1219 (3d Cir. 1989) (noting that by defending under a reservation of rights, the insurer avoided the risk of what "an inept or lackadaisical defense of the underlying action may expose [the insurer] to if it turns out there is a duty to indemnify"); *see also Perdue Farms, Inc. v. Travelers Cas. & Sur. Co. of Am.*, 448 F.3d 252, 259 (4th Cir. 2006) (same). Unlike these cases, it cannot be said that

---

was occurring. *Id.* at 1093, 1095.

National Surety was given an opportunity to avoid a subpar defense because, as already discussed, Immunex paid its own defense costs well before it tendered any claim to National Surety and National Surety never participated in any aspect of Immunex's defense.

The majority's other cases are even more easily distinguished. In *Capitol Indemnity Corporation v. Blazer*, 51 F. Supp. 2d 1080 (D. Nev. 1999), the court denied recoupment because the insurer failed to give its insured "'unambiguous notice that it may later be held responsible for costs incurred,'" *id.* at 1090 (quoting *Forum Ins. Co. v. County of Nye*, No. 91-16724, 1994 WL 241384, at *3 (9th Cir. June 3, 1994) (unpublished)). Had the insurer clearly indicated that it was reserving its rights and intended to seek reimbursement, as National Surety did in this case, the court likely would have allowed reimbursement. *Blazer* cuts against the majority's categorical rule.

In *Medical Liability Mutual Insurance Co. v. Alan Curtis Enterprises, Inc.*, 373 Ark. 525, 285 S.W.3d 233 (2008), the real issue was not recoupment of fees following a defense under a reservation of rights but lack of statutory authority to award attorney fees. The court considered various approaches to the issue of recoupment, but ultimately stated that the recoupment issue was irrelevant "because . . . attorneys' fees are not allowed in Arkansas except where *expressly* provided for by *statute*." *Id.* at 235. This case hardly supports the majority's position.

In *Zurich American Insurance Co. v. Public Storage*, applying Washington law, the court denied the insurer's request for recoupment because "[a]s a court sitting in diversity, it [was] inappropriate to blaze a new trail in Washington insurance law."

743 F. Supp. 2d 548, 551 (E.D. Va. 2010). The majority's claim that the court predicted Washington would disallow recoupment is not accurate, majority at 12; the federal court simply refused to allow recoupment because there was no Washington case on point that permitted it to do so. *Public Storage*, 743 F. Supp. 2d at 551.

In sum, while some of the cases point to the majority's desired result, they are very factually different from the case we must decide here. The majority has relied on these cases for their ultimate conclusion but has overlooked their facts and their reasoning. These cases are unpersuasive and should not control our decision.

## CONCLUSION

The majority's blanket determination that insurers may never recoup defense costs under a reservation of rights ignores the unique facts of each case and fails to appreciate the diversity and inapplicability of the different theories on which out-of-state jurisdictions have denied recoupment in certain circumstances. The majority fails to acknowledge that a majority of jurisdictions allow recoupment and that most do so on the equitable basis of avoiding unjust enrichment. Rather than accept the majority's all or nothing approach, this court should balance the equities of each case to determine whether an insurer has stated a legitimate claim in restitution to recover for its insured's unjust enrichment. Instead of affirming summary judgment on the issue of Immunex's entitlement to enrichment in the form of uncovered defense costs, I would reverse the Court of Appeals and remand this matter to the trial court to consider the facts specific to this case as discussed in this opinion to determine whether such enrichment would be unjust.

19

No. 86535-3

I dissent.

_Wiggins, J._

_J. M. Johnson_

_Quinn-Brintnall, J., P.T._

_Madsen, C.J._