FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON

2018 DEC 10 AM 8: 36

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| ZURICH AMERICAN INSURANCE COMPANY, a foreign insurance company,<br><br>    Respondent/Cross Appellant,<br><br>    v.<br><br>LEDCOR INDUSTRIES (USA) INC.; THE ADMIRAL CONDOMINIUM OWNERS' ASSOCIATION, a Washington nonprofit corporation; and NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PENNSYLVANIA, a foreign insurance company,<br><br>    Defendants,<br><br>ADMIRAL WAY, LLC, a Washington limited liability company,<br><br>    Appellant/Cross Respondent,<br><br>_____<br><br>LEDCOR INDUSTRIES (USA) INC., a Washington corporation,<br><br>    Defendants, | DIVISION ONE<br><br>No. 76405-5-I<br><br>UNPUBLISHED OPINION<br><br>FILED: December 10, 2018 |

ADMIRAL WAY, LLC, a Washington
limited liability company,

                Appellant,

        v.

AMERICAN INTERNATIONAL
SPECIALTY LINES INSURANCE
COMPANY, INC., a foreign insurance
company; VIRGINIA SURETY
COMPANY, INC., a foreign insurance
company; CAMBRIDGE INTEGRATED
SERVICES, INC., a foreign corporation;
LIBERTY INSURANCE
UNDERWRITERS, INC., a foreign
insurance company; AIU
COMMERCIAL INSURANCE
COMPANY OF CANADA, a foreign
insurance company; ADMIRAL
INSURANCE COMPANY, a foreign
insurance company; AMERICAN
SAFETY INSURANCE, a foreign
insurance company; AMERICAN
STATES INSURANCE COMPANY, a
foreign insurance company; THE
BURLINGTON INSURANCE
COMPANY, a foreign insurance
company; CNA INSURANCE
COMPANIES, a foreign insurance
company; TRANSPORTATION
INSURANCE COMPANY,
a foreign insurance company;
LEXINGTON INSURANCE COMPANY,
a foreign insurance company;
CORNHUSKER CASUALTY
COMPANY, a foreign insurance
company; FIRST MERCURY
INSURANCE COMPANY, a foreign
insurance company;
MUTUAL OF ENUMCLAW
INSURANCE COMPANY, a Washington
insurance company;
HARTFORD FIRE INSURANCE
COMPANY, a foreign insurance

company; LIBERTY SURPLUS
INSURANCE CORPORATION, a
foreign insurance company;
HARTFORD PROPERTY AND
CASUALTY COMPANY, a foreign
insurance company; CONTINENTAL
WESTERN INSURANCE COMPANY, a
foreign insurance company;
ASSURANCE COMPANY OF
AMERICA, a foreign insurance
company; MARYLAND CASUALTY
COMPANY, a foreign insurance
company; NATIONAL FIRE & MARINE
INSURANCE COMPANY, a foreign
insurance company; NORTH PACIFIC
INSURANCE COMPANY, a foreign
insurance company; WESTERN
NATIONAL ASSURANCE COMPANY,
a Washington insurance company;
NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH,
PENNSYLVANIA, a foreign insurance
company; AMERICAN HOME
ASSURANCE COMPANY,
a foreign insurance company; and
LIBERTY MUTUAL UNDERWRITERS,
INC., a foreign insurance company,

Respondents.

MANN, A.C.J. — This is one of two closely connected insurance coverage appeals arising out of the construction of "The Admiral," a mixed-use condominium building in West Seattle.[1] The appellant in this case is the owner and developer of the building, Admiral Way LLC (Admiral Way). Admiral Way contracted with Ledcor Industries (USA), Inc. (Ledcor) to serve as the general contractor. Admiral Way's contract with Ledcor required Ledcor to purchase Commercial General Liability (CGL) insurance and to name Admiral Way as an additional insured. Ledcor contracted with

---

[1] See Zurich American Ins. v. Ledcor Industries, Inc., No. 76490-0-I (Wash. Ct. App. Dec. 10, 2018) (unpublished).

multiple insurance carriers during the period of 2001-2007. The policies at issue are from the Virginia Surety Company, Inc. (VSC), the American International Specialty Lines Insurance Company, Inc. (AISLIC), and the Zurich American Insurance Company (Zurich).

After the Admiral Way Condominium Owners' Association (COA) sued Admiral Way and Ledcor in 2007 for construction defects, Ledcor and Admiral Way tendered the claim to each of these insurers. Zurich responded to the claim, and defended Ledcor and Admiral Way under a reservation of rights. VSC and AISLC denied coverage and a defense. Zurich subsequently filed a declaratory judgment action claiming it did not owe coverage to Ledcor. Admiral Way, VSC, AISLIC, and others were joined in the action.

Admiral Way appeals the trial court's decisions on summary judgment dismissing its claims against VSC, AISLIC, and Zurich. We reverse dismissal of Admiral Way's claims against VSC. We affirm dismissal of Admiral Way's claims against AISLIC and Zurich.

## FACTS

Admiral Way is the owner and developer of "The Admiral" a mixed use, four-story building in West Seattle with street level retail, 60 condominiums, and an underground parking garage. On April 3, 2001, Admiral Way contracted with Ledcor to act as the general contractor for construction of The Admiral.

The contract between Ledcor and Admiral Way required Ledcor to obtain CGL insurance naming Admiral Way as an additional insured. Specifically, Ledcor was required to "at its sole cost and expense, secure and maintain throughout the term of this Agreement, a policy or policies of comprehensive liability insurance, as will protect

-4-

the Owner, its successors and assigns . . . from and against any and all claims, losses, harm, costs, liabilities, damages and expenses arising out of (1) general liability including (a) bodily injury (including death), and property damage."

Ledcor purchased multiple CGL policies during the period between 2001 and 2006. Relevant to this appeal, Ledcor obtained coverage from American Home Insurance from December 1, 2001 to December 1, 2003; from VSC covering December 1, 2003 to December 1, 2004; from AISLIC covering December 1, 2004 to December 1, 2005; and from Zurich covering December 1, 2005 to December 1, 2006.

In 2001, Admiral Way retained building envelope consultant Morrison Hershfield (Morrison) to provide recommendations to the project. Morrison concluded there were "significant areas where there is inappropriate design, and to a lesser degree inappropriate construction that in our opinion makes the building high risk for premature envelope failure." The report did not cite any damages, but described instances of what it considered inadequate design or construction presenting a "high risk of premature failure."

On September 30, 2002, Morrison issued another memorandum addressing waterproofing issues with the deck and balcony entrances in the condominium units. Morrison noted that several of its recommendations for the "balcony wall interface" had not been implemented. Morrison also noted that the design of the wall assembly created a drainage issue. In another assessment, Morrison stated "[i]t is our opinion that water penetration behind the face of the cladding in these assemblies is unavoidable over the service life of building and given the lack of a well-defined drainage path, we believe water will eventually soak through the weather resistive

barrier and saturate the wall sheathing." Morrison similarly predicted water damage in several of the other wall assemblies. Finally, in May 2003, Morrison identified several areas where the contractors had not implemented their suggestions and concluded that under the current design, water saturation and damage was "unavoidable" and would likely require "major repairs."

The City of Seattle issued a certificate of occupancy for The Admiral in March 2003. The sale of condominiums began in April 2013. After a contract dispute, on February 10, 2004, Ledcor and Admiral Way executed a contract addendum that resolved their remaining disputes about payment and performance of Ledcor's work. The parties agreed in the addendum that the project was complete other than specific items in an attached punch list that were to be completed by February 20, 2004.

On February 28, 2007, the COA sent Admiral Way a notice of construction defect claim alleging that the building, or components of the building, were defectively designed and/or constructed, resulting in water intrusion that affected residential units, commercial spaces, and common areas throughout the project. This notice was followed by the filing of a complaint in the King County Superior Court. The COA's complaint alleged that damage to the building began at or shortly after the completion of each building:

> As a result of Declarant's acts and omissions, property damage to the Condominium has occurred to that part of real property on which contractors or subcontractors working on Declarant's behalf have completed their operations. Such property damage has also occurred to that part of real property that must be restored, repaired or replaced because of the work of others performed on Declarant's behalf. The property damage is continuous and ongoing throughout the Condominium. Damage may have commenced at or shortly after the completion of each building or element of infrastructure, and may be continuing to the present.

Admiral Way tendered defense of the COA claim to Ledcor's insurance companies: American Home Insurance, VSC, AISLIC, and Zurich. VSC denied it had a duty to defend. AISLIC admitted that it might have a duty to defend subject to exhaustion of a self-insured retention (SIR) clause under the contract. Zurich agreed to participate with American Home insurance to provide a defense to Ledcor and Admiral Way. Zurich reserved the right to contest coverage. VSC subsequently agreed to defend only Ledcor.

The parties settled the COA's claims for $4.7 million on July 28, 2009. The settlement was funded with contributions of $2.55 million from America Home Insurance Company, $150,000 from Ledcor, and $2 million from Admiral Way.

Zurich filed a declaratory judgment action against Admiral Way and Ledcor on March 17, 2009, seeking a declaration that it did not owe indemnity coverage to Admiral Way or Ledcor. Ledcor and Admiral Way counter claimed and filed third party claims against Ledcor's other insurers, including VSC and ASLIC. All parties filed motions and cross motion for summary judgment. The trial court dismissed all of Admiral Way's claims against Zurich, VSC, and AISLIC.

Admiral Way appeals.

### ANALYSIS

*Standard of Review*

We review summary judgment orders de novo, engaging in the same inquiry as the trial court. Keck v. Collins, 184 Wn.2d 358, 370, 357 P.3d 1080 (2015). Summary judgment is proper if, after viewing all facts and reasonable inferences in the light most favorable to the nonmoving party, there are no genuine issues as to any material fact

and the moving party is entitled to judgment as a matter of law. CR 56(c); Elcon Const. Inc. v. E. Wash Univ., 174 Wn.2d 157, 164, 273 P.3d 965 (2012). "The moving party on summary judgment must produce factual evidence showing that it is entitled to judgment as a matter of law. The burden then shifts to the nonmoving party to set forth facts showing that there is a genuine issue of material fact in dispute." Hartford Ins. Co. v. Ohio Cas. Ins. Co., 145 Wn. App. 765, 779, 189 P.3d 195 (2008).

The outcome of this case depends on the proper interpretation of the insurance policies. "Language in an insurance policy is interpreted as a matter of law, and construction of that language is reviewed de novo." Expedia, Inc. v. Steadfast Ins. Co., 180 Wn.2d 793, 802, 329 P.3d 59 (2014). We construe insurance policies as contracts. Weyerhaeuser Co. v. Commercial Union Ins. Co., 142 Wn.2d 654, 665, 15 P.3d 115 (2000). "Every insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy, and as amplified, extended, or modified by any rider, endorsement, or application attached to and made a part of the policy." RCW 48.18.520. We consider the policy as a whole, giving it a "fair, reasonable, and sensible construction as would be given to the contract by the average person purchasing insurance." Am. Nat'l Fire Ins. Co. v. B & L Trucking & Constr. Co., 134 Wn.2d 413, 427-28, 951 P.2d 250 (1998). Where possible, we harmonize clauses that seem to conflict in order to give effect to all of the contract's provisions. Realm, Inc. v. City of Olympia, 168 Wn. App. 1, 5, 277 P.3d 679 (2012).

If the policy language is clear and unambiguous, we must enforce it as written; we may not modify it or create ambiguity where none exists. Quadrant Corp. v. Am. States Ins. Co., 154 Wn.2d 165, 171, 110 P.3d 733 (2005). If a term is defined in a

policy, "the term should be interpreted in accordance with that policy definition." Kitsap County v. Allstate Ins. Co., 136 Wn.2d 567, 576, 964 P.2d 1173 (1998). A clause is ambiguous only "when, on its face, it is fairly susceptible to two different interpretations, both of which are reasonable." Quadrant, 154 Wn.2d at 171. If a clause is ambiguous, we may rely on extrinsic evidence of the intent of the parties to resolve the ambiguity. Weyerhaeuser, 142 Wn.2d at 666 (citing B & L Trucking, 134 Wn.2d at 427-28). Any ambiguity remaining after examination of the applicable extrinsic evidence is resolved against the insurer and in favor of the insured. Weyerhaeuser, 142 Wn.2d at 666.

*VSC*

Admiral Way first asserts that the trial court erred in granting VSC's motion for summary judgment and denying Admiral Way's motion for partial summary judgment on its claims of duty to defend and bad faith. We agree.

VSC issued Ledcor a CGL policy effective December 1, 2003 to December 1, 2004. Admiral Way provided VSC with the notice of construction defect claim on April 30, 2007, along with a certificate of insurance reflecting Admiral Way's status as an additional insured. VSC acknowledged receipt of Admiral Way's notice and requested additional information, which Admiral Way provided the next day. VSC issued a denial letter on May 16, 2007. Admiral Way was served with the COA complaint two months later and retendered the claim to VSC on July 25, 2007. VSC did not respond to the tender of the complaint.

Admiral Way filed a motion for partial summary judgment seeking a determination that VSC breached its duty to defend Admiral Way and that its conduct constituted bad faith. VSC moved for summary judgment dismissal of Admiral Way's

claims. On July 15, 2010, the trial court entered orders denying Admiral Way's motion for partial summary judgment, and granting VSC's motion to dismiss all of Admiral Way's claims.[2]

A.    Duty to Defend

The duty to defend is different from and broader than the duty to indemnify. Am. Best Food, Inc. v. Alea London, 168 Wn.2d 398, 404, 229 P.3d 693 (2010); Expedia, Inc. v. Steadfast Ins. Co., 180 Wn.2d 793, 802, 329 P.3d 59 (2014). The duty to defend is one of the main benefits of an insurance contract. Safeco Ins. Co. of Am. v. Butler, 118 Wn.2d 383, 392, 823 P.2d 499 (1992). "While the duty to indemnify exists only if the policy covers the insured's liability, the duty to defend is triggered if the insurance policy conceivably covers allegations in the complaint." Expedia, 180 Wn.2d at 802. "'The duty to defend arises when a complaint against the insured, construed liberally, alleges facts that could, if proven, impose liability upon the insured within the policy's coverage.'" Expedia, 180 Wn.2d at 802-03 (quoting Am Best Food, 168 Wn.2d at 404-05). Exclusionary clauses in the policy are strictly construed against the insurer. Expedia, 180 Wn.2d at 803. If the complaint is ambiguous, it will be liberally construed

---

[2] Relying on RAP 9.12, VSC moves to strike references in Admiral Way's brief to materials not specifically listed in the trial court's order on summary judgment. Generally, evidence called to the attention of the trial court is properly before us, whether or not it was considered by the trial court. Goodwin v. Wright, 100 Wn. App. 631, 648, 6 P.3d 1 (2000).

As the record on appeal aptly demonstrates the evidence that was brought to the attention of the trial court, this error is harmless. See W.R. Grace & Co. v. Dep't of Revenue, 137 Wn.2d 580, 591, 973 P.2d 1011 (1999). The parties filed cross-motions for summary judgment that were considered by the court at the same time and concerned the same parties. Admiral Way cited to the evidence provided in its motion for summary judgment in its response to VSC's motion for summary judgment. Similarly, VSC's motion for summary judgment relied on pleadings from the claims concurrently being considered by the court between VSC and Ledcor. The appellate "rules will be liberally interpreted to promote justice and facilitate the decision of cases on the merits. Cases and issues will not be determined on the basis of compliance or noncompliance with these rules except in compelling circumstances where justice demands." RAP 1.2. Justice does not so demand in this case. We deny VSC's motion to strike.

in favor of triggering the insurer's duty to defend. Truck Ins. Exch. v. Vanport Homes, 147 Wn.2d 751, 760, 5 P.3d 276 (2002).

The duty to defend is generally determined by looking at the "eight corners" of the insurance contract and the underlying complaint. The insurer is permitted to utilize the "'eight corners'" rule to determine whether, on the face of the complaint and the insurance policy, there is an issue of fact or law that could conceivably result in coverage under the policy. Expedia, 180 Wn.2d at 803. "There are two exceptions to this rule, and both favor the insured." Expedia, 180 Wn.2d at 803. First, "if it is not clear from the face of the complaint that the policy provides coverage, but coverage could exist, the insurer must investigate and give the insured the benefit of the doubt that the insurer has a duty to defend." Woo v. Fireman's Fund Ins. Co., 161 Wn.2d 43, 53, 164 P.3d 454 (2007). Second, "if the allegations in the complaint conflict with facts known to the insurer or if the allegations are ambiguous, facts outside the complaint may be considered." Expedia, 180 Wn.2d at 803-04 (citing Woo, 161 Wn.2d at 54).

1.      Coverage

We first determine whether Admiral Way was covered as an additional insured under the policy issued by VSC to Ledcor. The VSC policy issued to Ledcor contains two endorsements potentially providing additional insured coverage to Admiral Way.

The first endorsement, titled the "Commercial General Liability Broadened Coverage" endorsement defines "Who is Insured" to include "Any person or organization to whom you are obligated by virtue of a valid written contract to provide insurance such as is afforded by this policy, but only with respect to liability arising out of [Ledcor's] activities or operations." Under this endorsement, the question before us is

whether Ledcor, by virtue of a valid written contract, was required to provide coverage for Admiral Way.

Exhibit G of the contract between Admiral Way and Ledcor provides, in relevant part:

> The Contractor shall, at its sole cost and expense, secure and maintain throughout the term of this Agreement, a policy or policies of comprehensive liability insurance, as will protect the owner, . . . The policy or policies shall insure the hazards and operations of independent contractors, contractual liability (covering the indemnification contained in this Agreement) and shall (a) name the Owner as an additional insured, per Additional Endorsement Form B.

The "broadened covered" clause unambiguously creates the contractual obligation for Ledcor to add Admiral Way as an additional insured.[3]

VSC's policy to Ledcor also contains a separate "Additional Insured" endorsement that provides: "Who is An Insured is amended to include as an insured the person or organization shown in the Schedule." The schedule does not list any names, but provides "where required by written contract and evidenced by certificate of insurance on file with the company."

Admiral Way received a certificate of insurance from AON Risk Services, Inc., showing Marc Gartin as an additional insured under the VSC policy. VSC argues that Admiral Way was not properly added as an additional insured because the certificate of insurance was under the name Marc Gartin, and not Admiral Way. VSC ignores, however, that Gartin is the managing member of Admiral Way LLC. The certificate also identifies the "Project location" as "2331 42nd Ave SW, Seattle, WA," the street address of The Admiral. There is also evidence that VSC believed Admiral Way was an

---

[3] VSC argues that because "Form B" was not included in the record, the additional insured requirement is ambiguous. We disagree.

-12-

additional insured. VSC's initial denial letter to Admiral Way listed the client as "Marc Griffin, Managing Director Admiral Way, LLC" and did not contest Admiral Way's status as an additional insured, instead relying on the exclusions within the insurance contract to deny coverage.

Because any ambiguity remaining after examination of the applicable extrinsic evidence is resolved against the insurer and in favor of the insured, it appears that that Admiral Way was also an additional insured under the "additional insured" clause. Weyerhaeuser, 142 Wn.2d at 666.

2.    Exclusions

VSC maintains that even if Admiral Way is an additional insured, coverage was barred under both the "progressive, continuous or intermittent property damage exclusion" (progressive damage exclusion) and the "other insurance" clause of their policy. We disagree. We address each in turn, strictly construing the exclusion against VSC. Expedia, 180 Wn.2d at 803.

a. Progressive damage exclusion

The progressive damage exclusion has three requirements. For the exclusion to apply, VSC was required to demonstrate that (1) the property damage "existed or commenced prior to the inception date of th[e] policy, or (2) "arose out of any damage, defect, deficiency, inadequacy or dangerous condition which existed prior to the inception date of th[e] policy, and (3) that the damage was included under the defined "products—completed operations hazard." Work under the products—completed operations hazard would be deemed completed: "When all of the work to be done at the job site has been completed" or "When that part of the work done at a job site has been

-13-

put to its intended use by any person or organization other than another contractor or subcontractor working on the same project."

Ledcor's CGL policy from VSC was effective December 1, 2003 to December 1, 2004. Thus, the progressive damage exclusion excluded damage that existed or commenced, or arose out of a condition that existed, prior to December 1, 2003. While the certificate of occupancy for The Admiral was issued by the City of Seattle on March 14, 2003, and sale of the condominiums began in April 2003, Ledcor and Admiral Way contractually agreed that The Admiral was not substantially complete until February 2004—within the term of the policy.

The COA complaint is vague as to the start of the damage. The complaint lists multiple claims of water intrusion damages and defects, and states "the property damage is continuous and ongoing throughout the Condominium. <u>Damage may have commenced at or shortly after the completion of each building or element of infrastructure, and may be continuing to the present.</u>"[4]

Strictly construing the exception against VSC, because the date of substantial completion of the Admiral was February 2004—during the term of the VSC policy— VSC had a duty to investigate further and give Admiral Way the benefit of the doubt. <u>Woo</u>, 161 Wn.2d at 53. And because a reasonable interpretation of the facts could result in coverage, the progressive damage exclusion does not apply and VSC was under a duty to defend. <u>Am. Best Food</u>, 168 Wn.2d at 405.

### b. Other insured

The other insured condition in Ledcor's VSC policy provides that the insurance is excess over "Any other primary insurance available to you covering liability for damages

---

[4] (Emphasis added.)

arising out of the premises or operations for which you have been added as an additional insured by attachment of an endorsement." And further,

> When this insurance is excess, we will have no duty under Coverages A or B to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit." If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

In Admiral Way's original disclosures to VSC, it provided a list of other insurers that they had also contacted about these claims. A few other insurers did indeed defend Admiral Way. Nonetheless, there is no evidence in the record that shows VSC knew there was another primary insurance available to Admiral Way at the time it denied the Admiral Way's tender. Again, strictly construing the exception against VSC, VSC had a duty to at least investigate and give Admiral Way the benefit of the doubt. Woo, 161 Wn.2d at 53.

Because Admiral Way appears to have been covered as an additional insured, and because the exclusions relied upon by VSC appear not apply, there remains at least a question of fact as to whether VSC breached its duty to defend and summary judgment dismissal of Admiral Way's duty to defend claim was not appropriate.

B.    Bad Faith

To succeed on a bad faith claim, the policyholder must show the insurer's breach of the insurance contract was unreasonable, frivolous, or unfounded. Overton, 145 Wn.2d at 433; St. Paul Fire & Marine Ins. Co. v. Onvia, Inc., 165 Wn.2d 122, 130, 196 P.3d 664 (2008). Whether an insurer acted in bad faith is generally a question of fact. Van Noy v. State Farm Mut. Auto. Ins. Co., 142 Wn.2d 784, 796, 16 P.3d 574 (2001). Accordingly, an insurer is only entitled to "dismissal on summary judgment of a

-15-

policyholder's bad faith claim if there are no disputed material facts pertaining to the reasonableness of the insurer's conduct under the circumstances, or the insurance company is entitled to prevail as a matter of law on the facts construed most favorably to the nonmoving party." Smith v. Safeco Ins. Co., 150 Wn.2d 478, 484, 78 P.3d 1274 (2003).

"An insurer has a duty of good faith to all of its policyholders." Claims of insurer bad faith "are analyzed applying the same principles as any other tort: duty, breach of that duty, and damages proximately caused by any breach of duty." Smith, 150 Wn.2d at 485. "Claims of bad faith are not easy to establish and an insured has a heavy burden to meet." Overton v. Consol. Ins. Co., 145 Wn.2d 417, 433, 38 P.3d 322 (2002). To succeed, the insured must show the insurer's breach of the insurance contract was "unreasonable, frivolous, or unfounded." Kirk v. Mt. Airy Ins. Co, 134 Wn.2d 558, 560, 951 P.2d 1124 (1998). "If the insurer's denial of coverage is based on a reasonable interpretation of the insurance policy, there is no action for bad faith." Overton, 145 Wn.2d at 433.

"If the insured claims that the insurer denied coverage unreasonably in bad faith, then the insured must come forward with evidence that the insurer acted unreasonably." Smith, 150 Wn.2d at 486. "If the insurer can point to a reasonable basis for its action, this reasonable basis is significant evidence that it did not act in bad faith and may even establish that reasonable minds could not differ that its denial of coverage was justified." Smith, 150 Wn.2d at 486. The insured must then present evidence that the insurer's alleged reasonable basis was not the actual basis for its action, or that other factors outweighed the alleged reasonable basis. Smith, 150 Wn.2d at 486. The insurer is

entitled to summary judgment if reasonable minds could not differ that its denial of coverage was based upon reasonable grounds. Smith, 150 Wn.2d at 486.

Admiral Way contends there remains a question of fact whether VSC acted in bad faith when it failed to defend Admiral Way, even under a reservation of rights at the time they submitted the claim. VSC argues they did not act in bad faith because their denial of coverage was based on a reasonable interpretation of the policy, and because their insurance was excess under the "Other Insurance" clause within their policy.

We agree with Admiral Way. As discussed above, it appears that Admiral Way was covered as an additional insured under VSC's policy issued to Ledcor, and there remains at least a question of fact as to whether VSC reasonably investigated whether the two exclusions it relies upon actually excluded coverage. Dismissal of Admiral Way's bad faith claim on summary judgment was erroneous.

*AISLIC*

The CGL policy issued by AISLIC to Ledcor covered the term December 1, 2004 to December 1, 2005. Admiral Way sought coverage as an additional insured under that policy. Admiral Way argues that the trial court erred in granting AISLIC's motions for summary judgment and dismissing Admiral Way's claims. We disagree.

Admiral Way tendered the COA's construction defect claim to American Home Assurance Company, another insurer for Ledcor, on May 1, 2007. The tender was forwarded to AISLIC. AIG Domestic Claims, Inc., on behalf of AISLIC, responded and requested additional information regarding the claim. Admiral Way subsequently notified AISLIC that the COA had filed suit against Admiral Way.

On September 6, 2007, AIG Domestic Claims, Inc. issued a position letter to Admiral Way on behalf of AISLIC stating that AISLIC owes a defense obligation to Admiral Way "subject to the terms and conditions of the policy." However, the policy requires "excess of a $25,000 per dwelling unit/$10,000 products completed operations Self Insured Retention . . . [that] must be paid by the insured prior to any involvement of AISLIC." The letter stated, "until the retention has been satisfied, it is our position AISLIC has no obligation under the policy to participate." In addition, the letter identified various "potential coverage issues which may present themselves in the evaluation of the claim" in the event the self-insured retention was exhausted, such as the "continuous or progressive damage" exclusion. Admiral Way did not respond.

After AISLIC was added as a defendant in the declaratory judgment action, AISLIC moved for summary judgment arguing, among other grounds, that Admiral Way was not an additional insured because Ledcor was only obligated to provide such coverage during the term of the construction contract. On August 26, 2010, the trial court granted summary judgment in favor of AISLIC, determining that it owed no coverage to Admiral Way for the COA claim. Admiral Way's extra-contractual claims against AISLIC were reserved for a later motion. On December 5, 2011, the trial court also dismissed Admiral Way's extra-contractual claims asserted against AISLIC.

AISLIC contends that Admiral Way was not an additional insured under their policies because the contract agreement between Admiral Way and Ledcor was completed prior to their policies. We agree.

The AISLIC policy contained an endorsement captioned "Additional Insured - Owners, Lessees or Contractors - Completed Operations," which provided in pertinent part:

> Section II - Who Is An Insured is amended to include as an insured the person or organization shown in the Schedule, but only with respect to liability arising out of "your work" at the location designated and described in the schedule of this endorsement performed for that insured and included in the "products-completed operations hazard."

The Schedule states the "name of person or organization" is, "WHERE REQUIRED BY 'INSURED CONTRACT.'" Insured Contract is defined as

> That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Admiral Way's 2001 contract with Ledcor required that Ledcor obtain comprehensive liability insurance that adds Admiral Way as an additional insured "at its sole cost and expense . . . throughout the term of this Agreement." Consequently, the key question is whether the AISLC policy was issued during the "term of" the contract.

The contract's duration was set by the contractual language. "Unless otherwise provided, Contract Time is the period of time, including authorized adjustments, allotted in the Contract Documents for Substantial Completion of the Work." "Substantial completion" was defined as "the stage in the progress of the Work when the Work or designated portion thereof is sufficiently complete in accordance with the Contract Documents so that the Owner can occupy or utilize the Work for its intended use." Substantial completion was to be certified by the architect.

It is undisputed that the project architect never certified the project as complete. However, the City of Seattle issued a certificate of occupancy for The Admiral in March 2003, and the sale of condominiums began in April 2003. And further, Ledcor and Admiral Way agreed in the February 2004 contact addendum that the project was complete other than specific items in an attached punch list that were to be completed by February 20, 2004. Finally, it is undisputed that the parties found it unnecessary to obtain the architect certificate once they reached the February 2004 settlement.

Therefore, substantial evidence demonstrates the project was substantially complete by February 2004—prior to the December 1, 2004, inception of Ledcor's AISLIC policy. Consequently, Admiral Way was not an additionally insured under Ledcor's AISLIC policy and AISLIC did not have a duty to defend. Summary judgment and dismissal of Admiral Way's claims against AISLIC was appropriate.

*Zurich*

Admiral Way next asserts that the trial court erred in concluding that it was not an additionally insured under Ledcor's December 1, 2005, to December 1, 2006, policy with Zurich and in dismissing its bad faith and other extra contractual claims. We disagree.

Admiral Way tendered defense of the COA's claim to Zurich, asserting that it was an additional insured under general liability policies issued to Ledcor. Zurich agreed to defend Admiral Way under a reservation of rights. Zurich defended both Ledcor and Admiral Way. Admiral Way was defended by counsel of its own choosing.

Zurich commenced this action on March 17, 2009, to determine its insurance coverage obligations. The trial court granted Zurich's motion for summary judgment

-20-

dismissing Admiral Way's claims under the December 1, 2005 to December 1, 2006 policy on the grounds that Admiral Way was not an additional insured under the Zurich policy because the written agreement for Ledcor to include Admiral Way as an additional insured was no longer in effect. The trial court also dismissed Admiral Way's bad faith and extra-contractual claims.

A.    Additional Insured

Zurich argues that Ledcor was no longer contractually required to provide additional insured coverage under the contract because the project was completed before Ledcor entered into its policy with Zurich. We agree.

Ledcor's Zurich policy contained a blanket additional insured endorsement that extended additional insured status to anyone that Ledcor was required by written agreement to add as an additional insured. Another endorsement established that an organization is an "additional insured only with respect to liability arising out of your ongoing operations performed for that insured. A person's or organization's status as an insured under this endorsement ends when your operations for that insured are completed." As with AISLC, the key question is whether Admiral Way and Ledcor's contract was complete prior to the December 1, 2005, inception date of Ledcor's Zurich policy.

As discussed above with AISLC, the contract between Admiral Way and Ledcor was complete by February 2004—well before December 1, 2005. Consequently Admiral Way was not an additionally insured under Zurich's policy with Ledcor. The trial court did not error in concluding that Admiral Way was not an additional insured under Ledcor's Zurich policy.

B.    Bad Faith

Admiral Way argues next that even if it was not an additional insured, having accepted defense, Zurich failed to carry out its defense in good faith and without prejudicing Admiral Way's defense of the underlying claim. See, e.g., Sado v. Spokane, 22 Wn. App. 298, 301, 588 P.2d 1231 (1979) ("the voluntary assumption of a duty by affirmative conduct will give rise to liability if the performance is not done with reasonable care."). We disagree.

"When the facts or the law affecting coverage is disputed, the insurer may defend under a reservation of rights until coverage is settled in a declaratory action." Am. Best Food, 168 Wn.2d at 405. An insurer defending under a reservation of rights has "an enhanced obligation of fairness toward its insured" because of the "[p]otential conflicts between the interests of insurer and insured, inherent in a reservation of rights defense." Tank v. State Farm Fire & Cas. Co., 105 Wn.2d 381, 383, 715 P.2d 1133 (1986). Fulfilling this enhanced obligation requires the insurer to meet four criteria: (1) "thoroughly investigate" the claim against the insured, (2) "retain competent defense counsel for the insured," (3) fully inform the insured of "all developments relevant to his policy coverage and the progress of his lawsuit," and (4) "refrain from engaging in any action which would demonstrate a greater concern for the insurer's monetary interest than for the insured's financial risk." Tank, 105 Wn.2d at 388.

The only criteria in dispute in this case is whether Zurich engaged "in any action which would demonstrate a greater concern for the insurer's monetary interest than for the insured's financial risk." Admiral Way contends that Zurich demonstrated greater concern for its monetary interest than the interest of Admiral Way when it filed its

-22-

declaratory judgment motion before Admiral Way, Ledcor, and the COA reached a settlement. Admiral Way substantially relies on our Supreme Court's statement that "'The insurer 'may defend under a reservation of rights while seeking a declaratory judgment that it has no duty to defend,' . . . but it must avoid seeking adjudication of factual matters disputed in the underlying litigation because advocating a position adverse to its insured's interests would 'constitute bad faith on its part.'" Mut. of Enumclaw Ins. Co. v. Dan Paulson Constr., Inc., 161 Wn.2d 903, 914-15, 169 P.3d 1 (2007) (quoting 1 ALLAN D. WINDT, INSURANCE CLAIMS & DISPUTES: REPRESENTATION OF INSURANCE COMPANIES AND INSUREDS § 8:3, at 8-11 to -12 (5th ed. 2007)).

We reject Admiral Way's argument that the Supreme Court intended in Mutual of Enumclaw to bar initiating all declaratory judgment actions until after all settlement and litigation of the insured is completed. In this case, Zurich's declaratory judgment action occurred years after the original complaint, after the parties in the underlying complaint had already attended multiple mediations, and relied on substantially the same evidence as was already available to the parties. Moreover, unlike in Mutual of Enumclaw, Zurich did not interfere with the underlying action to the detriment of its insured. Admiral Way remained independently represented by counsel of its choice, funded by Zurich, and there was no evidence that the mediation was affected by Zurich's actions.[5]

---

[5] Admiral Way and Ledcor repeatedly reference Zurich's attempt to recoup defense costs it paid in the COA lawsuit. In 2013, our Supreme Court disallowed such reimbursement, holding "[d]isallowing reimbursement is most consistent with Washington cases regarding the duty to defend, which have squarely placed the risk of the defense decision on the insurer's shoulders." Nat'l Sur. Corp. v. Immunex Corp., 176 Wn.2d 872, 884, 297 P.3d 688 (2013). While reimbursement has been found to be unavailable, neither Admiral Way nor Ledcor make it clear how Zurich briefly requesting such reimbursement in 2009 contributes to a bad faith claim. There is no evidence that Zurich pursued these costs in an unreasonable or frivolous way, or that any damage arose out of this minor addition to Zurich's claim.

-23-

We hold that Zurich did not act in bad faith in defending Admiral Way, and did not unreasonably deny coverage or fail to investigate. Summary judgment dismissal of Admiral Way's claims against Zurich was appropriate.

We reverse dismissal of Admiral Way's claims against VSC and remand. We affirm dismissal of Admiral Way's claims against AISLIC and Zurich.

_Mann, A.C.J._

WE CONCUR:

_Trickey, J.P.T._

_Verellen, J._